**K&L GATES** LLP
10100 Santa Monica Boulevard
Seventh Floor
Los Angeles, California  90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

David P. Schack (SBN 106288)
david.schack@klgates.com
Michael John Miguel (SBN 145182)
michael.miguel@klgates.com
Matthew B. O'Hanlon (SBN 253648)
matthew.ohanlon@klgates.com
Carlo L. Rodes (SBN 268170)
carlo.rodes@klgates.com

**K&L GATES** LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania  15222-2613
Telephone: 412.355.6500
Facsimile: 412.355.6501

John M. Sylvester (*Pro Hac Vice*)
john.sylvester@klgates.com
Syed D. Ali (*Pro Hac Vice*)
syed.ali@klgates.com

Attorneys for Plaintiffs, Astra Oil Company
LLC and AOT Limited Zug

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASTRA OIL COMPANY LLC, a Delaware limited liability company; and AOT LIMITED ZUG, a Swiss entity,<br><br>Plaintiffs,<br><br>vs.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, of Syndicate Nos. 0623, 1183, 1221, 1225, 1414, 2001, 2003, 2623, 3000, 3010, 3210 Subscribing to Policy No. 63490 for the period May 1, 2009 to May 1, 2010; and CRUMP GROUP, INC., d/b/a Southern Marine & Aviation Underwriting, Inc.,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. 8:10-cv-01029-JAK -MLG<br>[Assigned to the Hon. John A. Kronstadt]<br><br>**DECLARATION OF MARINE INSURANCE EXPERT MICHAEL T. FITZGERALD IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT CERTAIN UNDERWRITERS AT LLOYD'S, LONDON'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      October 20, 2011<br>Time:      1:30 p.m.<br>Courtroom: 750 Roybal |

I, Michael T. Fitzgerald, declare as follows:

1.      If called to testify, I could and would competently testify to the following facts and opinion based on my expert knowledge.

2.      This declaration is made in support of Plaintiffs' Response to Underwriters Motion for Summary Judgment filed concurrently.

3.      I graduated with a Bachelors degree from Macalester College in St. Paul, Minnesota in December 1974 with a major in Economics and a minor in Political Science.

4.      I began my insurance career as a "Wet" Marine Broker working for the following insurance brokerage firms:  Johnson & Higgins, Minneapolis from 1975 to 1978; Marsh & McLennan, Dallas as Head of the Marine & Aviation Department from 1978 to 1997.

5.      I moved from the brokerage side of the "Wet" Marine business to the underwriting side in 1997. From 1997 to the present, I have worked as a Wet Marine Underwriter for Credit General Insurance Company, Dallas; Allianz Global Corporate & Specialty (AGCS), Dallas f/k/a Fireman's Fund McGee Marine Underwriters; and my current position is Senior Underwriter Ocean Cargo for the South Region of AGCS.

6.      In 1999, I joined Robert Hughes Associates as an associate.

7.      I recognize that there is a dispute between the parties in this case regarding which document constitutes the AOT ocean marine open cargo policy for the May 1, 2009 to May 1, 2010 period. I will refer to AOT's policy for the May 1, 2009 to May 1, 2010 period generally as the "Policy." For purposes of this declaration, I will also at times refer specifically to the document that Underwriters contend to be the relevant policy — the Marsh placing slip document bearing contract no. JC662009(1) ("Marsh placing slip document").

8.      The Policy reflects a meeting of the minds between the parties for issuance of an ocean marine open cargo policy that intentionally provides very broad

RECYCLED PAPER

DECLARATION OF MARINE INSURANCE EXPERT MICHAEL T. FITZGERALD

coverage — it is broadly worded and flexible so that it may cover as many scenarios as possible. AOT understood the Policy to be broad enough to provide coverage for all of its activities. *See* Deposition of Carlos Ortiz, 57:10-19 (relevant excerpts attached as Exhibit "A"). Furthermore, Tim Wheeler, the lead Lloyd's underwriter subscribing to the Policy, intentionally underwrote this Policy to be "very wide-ranging" and flexible to cover the needs for physical loss or damage risks for an oil trading company that buys and sells oil on a "plethora of different bases." *See* Deposition of Tim Wheeler, 145:1-10 (relevant excerpts attached as Exhibit "B"). Lastly, Andrew Fossler, the SMA/Crump underwriter that issued the Policy to AOT on behalf of Underwriters described this Policy as being "designed to accept within the terms and conditions of the policy all activity, all shipment, storage risks. . . ." *See* Deposition of Andrew Fossler, 81:21-25, 82:2-7 (relevant excerpts attached as Exhibit "C").

9.      Because the Policy issued to AOT was intended to provide very broad coverage for AOT's activities on a "plethora of different bases," the specific details of each trading arrangement that AOT enters into during the policy period would not be considered as facts material to the risk that must be disclosed to a reasonable and prudent insurer prior to underwriting the risk. In fact, the Policy was drafted in a way to provide flexibility for AOT's various types of trading activities. Full details of those trading activities were not intended to be enumerated and disclosed to Underwriters prior to the inception of the Policy.

10.     The coverage provided under the Policy is both broad and flexible with regard to coverage for both cargo and storage risks. The Policy provides coverage of the full policy limits of $200 million on an any one "unnamed" location basis. *See* Marsh placing slip document, at 8 of 82 (attached as Exhibit "D"). Moreover, the Policy is flexible because it provides coverage to AOT for its risks as an unpaid vendor, as well as guarantee of collectability coverage, increased value cover, and difference in conditions coverage. *See* Marsh placing slip document, 65-73 of 82.

RECYCLED PAPER

DECLARATION OF MARINE INSURANCE EXPERT MICHAEL T. FITZGERALD

11.    I have read and am familiar with the Declaration of Timothy Wheeler submitted in support of Underwriters' motion for summary judgment filed in this case.

12.    Mr. Wheeler, as lead underwriter and on behalf of all subscribing underwriters, implies, in bad faith, that the storage coverage provisions of the Marsh placing slip document are limited to those contained in the Storage Endorsement. To the contrary, storage is an integral part of the overall insurance provided to AOT throughout the Policy, as evidenced in the Marsh placing slip document. There are numerous references to storage coverage in the Marsh placing slip document by name, as "other risks," or by implication. *See, e.g.*, Marsh placing slip document, Expiry Dates and Declarations (p. 6 of 82), Limits of Liability (p. 8 of 82), Geographical Limits (p. 8 of 82), Schedule of Rates Clause 10 (p. 9 of 82), Deductible Clause 6 (p. 15 of 82), Cancellation Clause 15 (p. 18 of 82), and, among various others, Endorsement No. 3 (p. 66 of 82).

13.    Contrary to Mr. Wheeler's implication that storage coverage under the Policy is limited to the Storage Endorsement, there are numerous Policy provisions with application to AOT's storage coverage.

14.    Mr. Wheeler's discussion regarding "limited land-side storage" of petroleum products after discharge is misleading because it implies that storage coverage under the Policy is of a limited nature. This is inaccurate, as the Policy provides broad and flexible storage coverage. For example, the storage coverage under the Policy is not limited to land-side storage, as Mr. Wheeler states; in fact, storage coverage applies worldwide, ashore "or afloat." Moreover, storage coverage is not limited to product insured in transit; AOT's initial, and possibly only, exposure could be for product purchased in storage and never transported, and still be covered under the Policy. *See* Marsh placing slip document, Geographical Limits, at 8 of 82. Furthermore, the Marsh placing slip document shows that storage coverage applies to any "unnamed" storage location and for coverage up to the full policy limit of $200 million, providing broad, not limited coverage. This is consistent with the agreement

RECYCLED PAPER

DECLARATION OF MARINE INSURANCE EXPERT MICHAEL T. FITZGERALD

made by Underwriters prior to May 2008 that AOT would not be required to identify storage locations in advance and coverage would be provided for "unnamed" storage locations. *See* Ex. C, Fossler Dep., 148:8-22.

15.     Multiple shipments of product being delivered to one storage location is a valid concern for both Underwriters and AOT. It is common for ocean cargo policies to be written with a storage limit that exceeds or is multiples of the policy vessel limit. Being overexposed in violation of reinsurance treaties and/or underwriting capacities is also a legitimate concern. In fact, this was a concern to Underwriters here, and, based on that concern, Underwriters eliminated the standard Accumulation Clause from the Policy. *See* Ex. B, Wheeler Dep., 196:13-20. Thus, Underwriters issued coverage to AOT without the standard Accumulation Clause in order to keep their maximum limit of liability at $200 million under any and all circumstances. Therefore, Underwriters, based on the coverage issued, have avoided the possibility of being over-exposed in violation of reinsurance treaties and/or underwriting capacity. If Underwriters were concerned about AOT's exposure at any one storage location, including the CPC location, they would have restricted coverage at the full policy limit of $200 million to named locations only and/or provided a reduced limit at unnamed locations. But Underwriters issued the Policy providing storage coverage for the full policy limit of $200 million on an any one "unnamed" location basis. As such, it is evident that Underwriters did not consider the identity of any particular storage location, including the CPC location, to have been a fact material to the risk that AOT must have disclosed during the placement and underwriting of the risk. Under any loss scenario that could take place at the CPC storage location, the coverage provided by Underwriters would be limited to a maximum of $200 million.

16.     The Policy provides coverage for physical loss or damage to goods insured due to a covered peril. AOT's claim is based on the loss of cargoes that were destroyed in a fire at the CPC storage facility. The loss in question is not the loss of a liquidated, unsecured debt. In fact, the Policy provides coverage to AOT for its interest

RECYCLED PAPER

DECLARATION OF MARINE INSURANCE EXPERT MICHAEL T. FITZGERALD

as an unpaid vendor in a credit transaction. Mr. Wheeler's contention that trade credit insurance has any application to AOT's loss is inaccurate, misleading, and, in my opinion, made in bad faith.

17.    The Policy provides contingent storage coverage to AOT which is applicable to the loss suffered here by AOT. The contingent storage coverage is clarified in an endorsement issued by SMA/Crump to AOT on behalf of Underwriters. *See* Ocean Marine Open Cargo Policy No. 63490, Endorsement No. 32 (attached as Exhibit "E"). The coverage, as clarified in Endorsement No. 32, is provided under the Policy and is also set forth under the terms of the Marsh placing slip document.

18.    AOT had an insurable interest in the cargoes at the time of the loss at issue because AOT was an unpaid vendor having a pecuniary interest in the preservation of those cargoes. In this case, the cargoes served as collateral for CPC's payment to AOT. Based on the plain language of the Policy, coverage is provided to AOT for its insurable interest as an unpaid vendor in a credit transaction.

I declare under penalty of perjury under the laws of the United States that this declaration is true and that it was executed in Dallas, Texas on September 28, 2011.

*Michael T. Fitzgerald*

Michael T. Fitzgerald

RECYCLED PAPER

5

DECLARATION OF MARINE INSURANCE EXPERT MICHAEL T. FITZGERALD

# Exhibit A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ASTRA OIL COMPANY LLC, a    )   CASE No.
Delaware limited liability   )SACV19-10129 JAK (MLGx)
company; and AOT LIMITED    )
ZUG, a Swiss entity,         )
                             )
         Plaintiffs,   )
                             )
    v.                  )
                             )
CERTAIN UNDERWRITERS AT   )
LLOYD'S LONDON, of Syndicate)
Nos. 0623, 1183, 1221, 1225,)
1414, 2001, 2003 2623, 3000,)
3010, 3210 Subscribing to   )
Policy No. 63490 for the   )
period May 1, 2009 to May,  )
2010; and CRUMP GROUP, INC.,)
d/b/a Southern Marine &     )
Aviation Underwriting, Inc.,)
                             )
         Defendants.   )
                             )
And related actions.      )
_____)

DEPOSITION OF CARLOS ORTIZ,
Taken on Wednesday, August 10, 2011

REPORTED BY:
PATRICIA M. PORTER
CSR No. 3730
File No. 11-300

1

FOR LLOYDS OF LONDON:

FREEMAN, FREEMAN & SMILEY
BY: GERALD M. FISHER, ATTORNEY AT LAW
ROBERT S. CROWDER, ATTORNEY AT LAW
JOHN VAN ACKEREN, ATTORNEY AT LAW
1920 Main Street
Suite 1050
Irvine, California 92614
(949) 252-2705
gmf@ffslaw.com

FOR CRUMP GROUP, INC.:

FOWLER, RODRIGUEZ, VALDES-FAULI, FLINT,
GRAY, MCCOY, SULLIVAN and CARROLL
BY: MAT M. GRAY, ATTORNEY AT LAW
400 Poydras Street
30th Floor
New Orleans, Louisiana 70130
(504) 523-2600
mgray@frvf-law.com

ALSO PRESENT:
  Thomas M. Exl
  Alex Klyusner, videographer

3

The deposition of CARLOS ORTIZ, witness, taken on behalf of Lloyd's of London, at 1920 Main Street, Suite 1050, Irvine, California at 9:41 a.m., Wednesday, August 10, 2011, before PATRICIA M. PORTER, C.S.R. No. 3730, pursuant to Notice.

***

APPEARANCES OF COUNSEL:

FOR PLAINTIFF:

   K&L GATES
   BY: JOHN M. SYLVESTER, ATTORNEY AT LAW
   SYED D. ALI, ATTORNEY AT LAW
   210 Sixth Avenue
   Pittsburgh, Pennsylvania 15222
   (412) 355-6500
   john.sylvester@klgates.com

2

I N D E X

| Witness | EXAMINATION | Page |
|---|---|---|
| CARLOS ORTIZ | BY MR. FISHER | 6 |
| | BY MR. GRAY | 70 |
| | FURTHER EXAMINATION | |
| | BY MR. FISHER | 106 |
| | BY MR. GRAY | 112 |

E X H I B I T S

| | | Page |
|---|---|---|
| 187 | E-mail dated January 21, 2010 | 34 |
| 188 | Spreadsheet | 40 |
| 189 | Insurance policy | 50 |
| 190 | Letter | 52 |
| 191 | E-mail | 83 |
| 192 | Documents | 86 |

QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER
                    NONE

4

1   **A.** Not entirely.

2   **Q.** That you don't need to declare?

3   **A.** No, that's not necessarily what I'm saying.

4   What I'm saying is, as it's been described to us,

5   through the marketing this policy -- I'll go back to  11:41:33AM

6   times and conversations with the broker -- it -- the

7   policy and its provisions always are in force.  If

8   there is an omission of a -- of a declaration,

9   you're still covered.

10      Again, it's difficult for me, not being an  11:41:51AM

11   expert on insurance or being a lawyer, to dissect

12   the exact provisions I'm referring to.  I'm relying

13   on the general discussions that I've had with the

14   broker as he marketed the policy to us, described

15   every year how this policy operates, we discussed  11:42:09AM

16   our business profiles, and you know, what happens if

17   this happens, so on and so forth, and it's generally

18   our belief that this is an in-force broad policy for

19   all of our activities.

20      Now, we do follow up with declarations for  11:42:25AM

21   rating purposes for premiums.

22   **Q.** Well, let me ask you this.  After AOT was

23   aware of the loss that is the subject of this case,

24   it then declared the five shipments that are the

25   subject of this case, correct?     11:42:50AM

<center>57</center>

1   **A.** Five shipments that went into storage --

2   **Q.** Correct?

3   **A.** Right.

4   **Q.** And it paid premiums, $5860.  Correct?  For

5   those shipments.     11:43:03AM

6   **A.** I know we paid a premium, I'm not sure of

7   the amount.

8   **Q.** Right.  For approximately $60,000,000 worth

9   of cargo?

10   **A.** I think that's correct.     11:43:13AM

11   **Q.** If, as I understand your testimony, a

12   declaration isn't necessary, why did you declare it?

13   **A.** Well, post the incident.

14   **Q.** Yes.

15   **A.** An opportunity to again review the policy  11:43:31AM

16   with -- with experts, it was a prudent thing to do

17   to reaffirm our coverage within this policy.

18   **Q.** Then why didn't AOT, if you know, declare

19   all of the other cargos between 2007 and the date of

20   loss?     11:43:57AM

21      **MR. SYLVESTER:** Objection.  Asked and

22   answered.

23   BY MR. FISHER:

24   **Q.** Since those must have been covered too?

25   **A.** I'm sorry, repeat that?     11:44:02AM

<center>58</center>

1      **MR. SYLVESTER:** No, I object that the

2   question was already asked and you already answered

3   that same question, and so that --

4      **MR. FISHER:** Actually, please, repeat the

5   question.  Because I'd like a very specific answer  11:44:11AM

6   to that question.

7      (Record read as follows:

8        "Q.  Then why didn't AOT, if

9        you know, declare all of the

10        other cargos between 2007 and  11:44:33AM

11        the date of loss since those

12        must have been covered too?")

13      **THE WITNESS:** Well -- before I answer, can I

14   ask a question here?  You're referring to all the

15   other cargos from 2007 and the date of loss.    11:44:40AM

16   BY MR. FISHER:

17   **Q.** That were in storage at CPC?

18   **A.** Were those -- were --

19   **Q.** During the void period, as you used the

20   term.     11:44:51AM

21   **A.** Sure.  But were those cargos -- let's just

22   start at 2007.  Were those cargos, cargos that --

23   some of those cargos not included in our claim?

24   **Q.** They were not included in your claim.

25   These are the cargos during the void period.    11:45:06AM

<center>59</center>

1   **A.** Because our declaration that we issued at

2   this time in -- in October had a date period that

3   was consistent with the time allowed within the

4   policy.  So therefore, we declared back to only the

5   cargos that fell within that -- that date period.  11:45:28AM

6   **Q.** So you did not declare -- I just want to be

7   clear here -- after 2007, AOT did not declare or pay

8   any premium for cargo until the date of the loss,

9   correct?

10      **MR. SYLVESTER:** You're talking about storage  11:45:50AM

11   premium.

12      **MR. FISHER:** Storage premium.

13      **MR. SYLVESTER:** Not cargo premium.

14   BY MR. FISHER:

15   **Q.** Storage premium at CPC?     11:45:55AM

16   **A.** Can you repeat the whole question?

17   **Q.** Yes.  So we're clear, AOT did not pay any

18   premium or submit any declarations for cargo stored

19   at CPC between 2007 and the declaration after the

20   date of loss of the cargo in this case.  Correct?  11:46:19AM

21      **MR. SYLVESTER:** Let me just caution you --

22   don't speculate, but you can --

23      **THE WITNESS:** I can't be certain.  As I

24   mentioned before, I think there may have been some

25   inadvertent declarations issued in that time period.  11:46:34AM

<center>60</center>

<center>**8**</center>

# Exhibit B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1 ASTRA OIL COMPANY LLC, a )
2 Delaware limited liability)
3 company; and AOT LIMITED )
4 ZUG, a Swiss entity,    )
5                         )
6   Plaintiffs,  )
7                         )
8 vs.           ) CASE NO. SACV 10-1029 JVS(MLGx)
9                         )
10 CERTAIN UNDERWRITERS AT  )
11 LLOYD'S, LONDON, of    )
12 Syndicate Nos. 0623, 1183,)
13 1221, 1225, 1414, 2001, )
14 2003, 2623, 3000, 3010, )
15 3210 Subscribing to Policy)
16 No. 63490 for the period )
17 May 1, 2009 to May 1,   )
18 2010,                   )
19                         )
20   Defendants.  )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
ORAL VIDEOTAPED DEPOSITION
ANDREW FOSSLER
FEBRUARY 17, 2011
VOLUME 1
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL VIDEOTAPED DEPOSITION OF ANDREW FOSSLER, produced
as a witness at the instance of the Plaintiffs and duly
sworn, was taken in the above-styled and numbered cause on
the 17th day of February, 2011, from 9:32 a.m. to

1

APPEARANCES

FOR PLAINTIFFS:

Mr. John M. Sylvester
Mr. Syed D. Ali
K&L GATES, LLP
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222-2613

FOR DEFENDANT UNDERWRITERS AT LLOYD'S:

Mr. Gerry Fisher
Mr. Robert S. Crowder
FREEMAN FREEMAN SMILEY, LLP
3415 S. Sepulveda Blvd.
Suite 1200
Los Angeles, CA 90034
FOR SOUTHERN MARINE:
Mr. Timothy W. Strickland
FOWLER, RODRIGUEZ, VALDES-FAULI
4 Houston Center
1331 Lamar Street, Suite 1560
Houston, Texas 77010
ALSO PRESENT:
Mr. Thomas M. Exl
Mr. Dusty Hannah

3

1 4:30 p.m., before Anne F. Sitka, Certified Shorthand
2 Reporter in and for the State of Texas, reported by
3 computerized stenotype machine at the offices of Mehaffy
4 Weber, One Allen Center, 500 Dallas, Suite 1200, Houston,
5 Texas 77002, pursuant to the California Rules of Civil
6 Procedure and the provisions stated on the record or
7 attached hereto.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

2

I N D E X

                                                    PAGE
Appearances ....................................... 3
Andrew Fossler
    Examination by Mr. John M. Sylvester ........ 8
Signature and Changes ........................... 207
Reporter's Certificate ........................... 209

EXHIBITS
NO./DESCRIPTION                              PAGE
No. 110 ............................................ 14
    Notice and Subpoena
No. 111 ............................................ 14
    Subpoena
No. 112 ............................................ 33
    Fossler Letter to Mr. Strickland, 11/8/10
No. 113 ............................................ 34
    E-mail with Letter to Mr. Strickland from Mr. Ali
No. 114 ............................................ 37
    Marine Binding Authority Agreement, U0007051-7100
No. 115 ............................................ 41
    Marine Binding Authority Agreement, U0001545-1603
No. 116 ............................................ 43
    Marine Binding Authority Agreement, U0007947-8003

4

1  indicated it's a broad type of coverage that is available
2  to provide insurance for a wide range of activities that a
3  trading company would engage in?
4      A.  Yes.  By "broad," I mean, I'll -- I'll respond to
5  your -- your statement --
6          MR. FISHER: I want to interpose an
7  objection to form because the question assumes some facts
8  here, some foundation.  One, you're asking him about Tim
9  Wheeler's testimony; but I don't know whether -- I can't
10 tell from the question whether you're talking about his
11 testimony with respect to the primary, the surplus binder
12 or the open-market cover.
13         MR. SYLVESTER: Let me -- let me rephrase
14 the question.
15     A.  Okay.
16     Q   (By Mr. Sylvester)  Forget about Mr. Wheeler for
17 the moment.  With regard to Exhibit 123, do you understand
18 that this policy provides broad coverage for activities of
19 international traders who buy, sell, transport and store
20 products including petroleum products?
21     A.  As an open ocean cargo policy, it's designed to
22 accept within the terms and conditions of the policy all
23 activity, all shipments, storage risks whether that -- on
24 a global basis this policy is designed to provide
25 insurance protections for a global oil trader.

81

1      Q.  Okay.
2      A.  In that respect I would -- I would call it broad.
3  The terms and conditions are certainly not dissimilar to
4  that which the London market provides or some of our other
5  competitors.  But it's -- it's an -- it's designed to
6  accept all declarations without the insured advising
7  Underwriters of each individual shipment obviously.
8      Q.  And in many instances declarations, as you said,
9  could come a month or two after the cargo transit or
10 storage activity that is the subject of the declarations?
11     A.  Oh, yes.
12     Q.  And it's also possible under a policy like
13 Exhibit 123 coverage could be afforded for cargo whether a
14 loss has occurred before the declaration has been
15 submitted to Underwriters in connection with the policy;
16 is that right?
17     A.  Yes.
18     Q.  Have you seen that happen on occasion?
19     A.  I have.
20     Q.  Would you agree that the -- the coverage provided
21 under Exhibit 1 -- well, strike that question.
22         Do you recall that in connection with the
23 policy to -- for the subsequent policy period -- that is,
24 May 1, 2008, to May 1, 2009 -- that Astra sought a higher
25 limit of coverage than that which was afforded under this

82

2007-2008 policy that we marked as Exhibit 123?
    A.  Yes.  And let me qualify my statement.  We had in
place the -- besides the 50-million-dollar policy, which
is this exhibit here, we also -- we also placed a
separate -- what we refer to as excess of loss cover into
the London open market; and we did that for a number of
years because as the price of oil fluctuated and
increased, the 50-million-dollar policy limit was not
sufficient to protect Astra.  And so, as a consequence we
arranged cover in the London open market through Marsh for
50 million excess of loss of 50 million.  That excess
placement was a -- followed the -- fully the terms and
conditions of the underlying policy.
    Q.  Okay.  Well, let's be clear about what year we're
talking about.  Let's talk first about the May 1, 2007,
through May 1, 2008, year.  Was there excess cover in
place for Astra that was 50 million in excess of 50 that
was placed during that policy period?
    A.  I believe so, yes.
    Q.  Now, this policy, Exhibit 123, shows its limit of
50 million, if you look on page 3783.
    A.  3783?
    Q.  83.  Okay.
    A.  I'm sorry.  What's the --
    Q.  Yes, page 3783 under limits of liability.

83

    A.  Ah, yes.
    Q.  Okay.
    A.  Okay.
    Q.  So, this was the first 50 million; and this was
issued pursuant to the binding authority agreement in
place at that time?
    A.  Yes.
    Q.  Between SMA and both New York Marine Managers and
Underwriters at Lloyd's?
    A.  Yes.
    Q.  Now, was there an additional policy issued during
this policy period for 50 million excess of this 50
million?
    A.  Yes.
    Q.  Is there a separate policy document that reflects
that placement?
    A.  It would be a -- what we would refer to as a
cover note, London open market placement that we arranged;
and we do not -- we do not have underwriting authority.
That was placed into the London open market via Marsh in
London.
    Q.  So, for the 50 million coverage in excess of this
50, rather than relying on binding authority, you would go
to the open market through Marsh to get the ability to
issue coverage for excess amounts above the 50 million?

84

**11**

1  any document that looks like a binder so far in these
2  exhibits?
3     **A.** I have not. I've not seen one.
4     **Q.** It's not the same as the cover note that --
5     **A.** No.
6     **Q.** -- was at the front of Exhibit 130 --
7     **A.** No.
8     **Q.** -- was it?
9     **A.** It's -- it's not, but let's see if there is one
10 here. Yes, well, here we are.
11    **Q.** So, is it in -- what's the order --
12    **A.** It's Exhibit 133. And it is a -- it's our --
13 it's a renewal quotation for the '09-'10 year, but it is
14 in the standard form that I normally -- I normally issue
15 to -- to our producers.
16    **Q.** Let me just take a look at that for --
17    **A.** And this is the format.
18    **Q.** -- a second.
19    **A.** That's the format. That's how it appears.
20    **Q.** Okay. So --
21    **A.** Now, that is quote. It's not a binder but --
22    **Q.** Well, is that what you attached as referred to --
23    **A.** My --
24    **Q.** -- in Exhibit 136?
25    **A.** Yes. Now, it might have been styled Astra Oil
                                    145

1  because that would have been the -- my normal way of
2  conducting business with my producers is to have a -- a
3  renewal quote in writing like this; and then once we get a
4  instruction to bind, then I follow up much the same
5  format. And that is instead of saying "we are prepared to
6  bind," I would state "we have bound" renewal.
7     **Q.** I see. Okay. But the format would be similar to
8  what's part of Exhibit 133 starting on Bates numbered
9  page 723?
10    **A.** Yes.
11       **MR. SYLVESTER:** Tim, for the record we would
12 request a copy of the attachments to this e-mail.
13       **MR. STRICKLAND:** Exhibit 136?
14       **MR. SYLVESTER:** Yes.
15    **Q** (By Mr. Sylvester) Okay. Then let's look at the
16 next document in this renewal process of the '09-'10 year.
17       **MR. SYLVESTER:** We'll mark the next document
18 as Exhibit 137.
19       (Exhibit 137 marked)
20    **Q.** (By Mr. Sylvester) Exhibit 137 is an e-mail
21 exchange between yourself and Richard Abbott; and it says,
22 "Richard, attached is the wording we need to incorporate
23 into the policy." And -- and that was in response to an
24 earlier e-mail from Hayley -- I'm sorry -- from you to
25 Hayley saying, "Hayley, we should use the attached storage
                                    146

endorsement for Astra" because on the prior page, she had
written to you -- I'm sorry. That's on the following page
but the prior e-mail.
       On page 442 she had written to you, "Hi,
Andy, hope you are well. We're currently going through
our wording of notice that the storage endorsement which
was originally contained in the surplus oil binder lists
specific locations (please see attached), whereas the
storage endorsement contained in your submission states a
200-million-dollar limit with no named locations as per
attached. In order for us to finalize the placement,
please advise if you would like us to leave the storage
open-ended with no named locations."
       Do you recall that communication with
Hayley?
    **A.** I don't -- I don't recall it; but I'm looking at
it, so.
    **Q.** And she was asking about what wording to use for
the storage coverage in the '09-'010 policy, whether it
should list specific locations or whether it would be left
open-ended. Do you recall that?
    **A.** Right.
    **Q.** Does this refresh your recollection?
    **A.** Yes.
    **Q.** And you responded by sending her a copy of the
                                    147

storage wording, which if you look at the last two pages
of this document, you'll see the storage endorsement
designated CAR 009?
    **A.** Yes.
    **Q.** Is that what you told her to include in the
policy?
    **A.** Yes.
    **Q.** And this storage endorsement is open-ended in
that it doesn't require that the policyholder identify in
advance the specific storage locations from which it can
obtain coverage for its storage risks; is that right?
    **A.** That's correct. We -- we were able to obtain an
agreement from Underwriters in the prior year. The first
year it was placed in the open market for a
200-million-dollar limit, any one location, as opposed to
specific named locations.
    **Q.** Is that something that was important to Astra to
have the flexibility not to necessarily name specific
storage endorsement locations as part of the policy?
    **A.** Yes.
    **Q.** And underwriters agreed to that?
    **A.** Yes.
    **Q.** Okay. Let's then go to the next document, which
we'll mark as Exhibit 138.
       (Exhibit 138 marked)
                                    148

**12**

# Exhibit C



ASTRA OIL COMPANY LLC v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON

Deposition of Tim Wheeler

January 19, 2011

Opus 2 International - Official Court Reporters

Phone:      +44 (0)20 3008 5900
Email:      depos@opus2international.com
Website:    http://www.opus2international.com

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3     ————————————————————————

4     ASTRA OIL COMPANY LLC, a Delaware

5     limited liability company; and AOT

6     LIMITED ZUG, a Swiss entity,

7     Plaintiff,

8     Vs.

9     CERTAIN UNDERWRITERS AT LLOYD'S,      Case No. SACV10-1029-JVS

10    LONDON, of Syndicate Nos. 0623,              MLGx

11    1183, 1221, 1225, 1414, 2001,

12    2003, 2623, 3000, 3010, 3210      [Assigned to the Hon.

13                                          James V. Selna]

14    Subscribing to Policy No. 63490

15    for the period May 1, 2009

16    to May 1, 2010,

17    Defendants.

18    ————————————————————————

19          Wednesday, January 19, 2011

20       VIDEOTAPED DEPOSITION OF TIM WHEELER

21             At: 9.34 A.M.

22             Taken at:

23             K & L Gates

24    110 Cannon Street, London, EC4N 6AR

25    Reported by:  MRS. EMMA WHITE, Opus 2 International

OPUS 2 International                    depos@opus2international.com
Official Court Reporters                    +44 (0)20 3008 5900

```
 1    A    Yes.  I think it would help to explain that this is

 2         a very wide-ranging policy designed to be flexible to

 3         cover the needs for physical loss or damage risks for an

 4         oil trading operation that is buying and selling oil on

 5         a plethora of different bases, hence it tends to be

 6         relatively vaguely worded, and relatively flexible to

 7         allow it to fit as many scenarios as is possible,

 8         whether they buy FOB, C&F, CIF, Franco, Domicile,

 9         whatever the terms may be, we operate in our market

10         under the principle of utmost good faith.  We expect to

11         exercise utmost good faith in all the dealings we have

12         with our insureds and with the brokers we do business

13         with, and we expect the same of them.  If we feel that

14         a client is not declaring on a regular basis, or is only

15         declaring those shipments on which he has losses in

16         order to maximize his recovery under a policy but

17         minimize the premium that he is paying, then we would

18         certainly look seriously at that area of the wording.

19         If we feel that a client has only declared to us

20         following a loss, we would take that seriously under

21         that section of the wording as well.

22    Q    Have you reviewed the history of cargo declarations,

23         declarations and storage risk declarations that Astra

24         has made under this cover over the years?

25    A    I have not personally, but it has been done.
```

1           "Dear David, as Poodle is absent due to illness

2       I have been unable to agree the final wording with him,

3       which is far from satisfactory, particularly from

4       a Contract Certainty point of view.  As you are visiting

5       Andy Fossler next week will you please raise the

6       following points with him. The order of these points are

7       as they occur in the Draft wording left with me in

8       London and does not reflect the importance of any

9       particular point."

10          Then you go on to identify some specific problems

11      you have with wording.  What was the purpose of this

12      particular email to Mr. Roe, copied to Mr. Folwell?

13  A   There were still aspects of the wording which I had

14      agreed to write the risk on which had not been amended

15      in the Marsh slip, and that is clearly shown under item

16      4 where they had continued on page 26 of 86 to include

17      an accumulation clause which could have exposed

18      underwriters to US$400 million, and, as I clearly state

19      there, we said from the start we could not accept this,

20      and it must come out.

21  Q   You're writing that on the 8th of May, 2008?

22  A   Correct.

23  Q   Why did you ask Mr. Roe at Ascot to take this up with

24      Southern Marine?

25  A   I am speculating here because my memory doesn't go back

# Exhibit D

| CONTRACT NO. | **MARSH LTD** | PAGE 1 OF 82 |
| --- | --- | --- |
| JC662009 (1) | **MARINE & ENERGY PRACTICE** | |

## RISK DETAILS

**UNIQUE MARKET**
**REFERENCE:**        B0509JC662009

**TYPE:**            CARGO INSURANCE OPEN COVER.

**ASSURED:**         ASTRA OIL COMPANY, INC. and/or subsidiary and/or associated and/or affiliated companies and/or interrelated companies and/or corporations as they now exist or as may be created and/or constituted and/or as agents and/or for whom they have instructions to insure.

|  | ADDRESS: | 301 Main Street Suite 201 Huntington Beach, CA 92648-5171 United States |
| --- | --- | --- |

**PERIOD:**          To take all insurances attaching hereto during the period from 1st May, 2009 at 12.01 a.m. Local Standard Time to 1st May, 2010 at 12.01 a.m., Local Standard Time at the place shipment commences and on all goods and/or merchandise and/or property in storage at locations insured under this policy.

**CONVEYANCES:**     As per wording attached.

**SUBJECT-**
**MATTER**
**INSURED:**         As per wording attached.

**LIMITS:**          As per wording attached.

**DEDUCTIBLE:**      As per wording attached.

**GEOGRAPHICAL**
**LIMITS:**          As per wording attached.

**BASIS OF**
**VALUATION:**       As per wording attached.

**CONDITIONS:**      Including War, Strikes, Riots and Civil Commotions etc, as per the War and Strikes as contained within the Manuscript Wording, but the War Clauses being no wider that the current Institute/American War Clauses.

INSTITUTE MARINE POLICY GENERAL PROVISIONS (CARGO) CL269 DATED 1.10.82 as attached.

| **1221** |
| --- |
| Contract Leader |

U0000026

**MARSH LTD**   PAGE 2 OF 82

CONTRACT NO.
JC662009 (1)         **MARINE & ENERGY PRACTICE**

AMERICAN CLASSIFICATION CLAUSE

Shipped on:

1.   metal hulled, self propelled vessels which are not over 20 years of age nor less than 1,000 net registered tons and which are classed A1 American Record or equivalent by a Member of the International Association of Classification Societies; or

2.   vessels over 20 years of age which are approved by Insurers, and which are not less than 1000 net registered tons and classed as in 1. above, but only while operating in their regular trades;

but in either case excluding vessels built:

a.   for service on the Great Lakes
b.   solely for military or naval service; or
c.   for the carriage of dry bulk or liquid bulk cargoes, and which are more than 15 years of age, unless specifically approved by Insurers.

Per vessels excluded or not provided for by the above wording but covered by the terms of this insurance, rates to be arranged by Slip Leader.

Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons Exclusion Clause CL370 dated 10.11.03 as attached.

| 1221 |
| --- |
| Contract Leader |

U0000027

**MARSH LTD**

CONTRACT NO.
JC662009 (1)

**MARINE & ENERGY PRACTICE**

PAGE 3 OF 82

RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL, BIO-CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE
PLUS (U.S.A. ENDORSEMENT AMENDED)

This insurance (reinsurance) is subject to the Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons Exclusion Clause CL370 dated 10.11.03 provided that

If fire is an insured peril

and

Where the subject-matter insured or, in the case of a reinsurance, the subject-matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2 and 1.4 of the Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons Exclusion Clause CL370 dated 10.11.03

any loss or damage arising directly from that fire shall, subject to the provisions of this insurance (reinsurance), be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction nuclear radiation or radioactive contamination arising directly or indirectly from that fire.

Where mentioned, the following phrase or phrases are deleted from all Institute Clauses referred to herein:

(FOR USE ONLY WITH THE NEW MARINE POLICY FORM)
(FOR USE ONLY WITH THE CURRENT MARINE POLICY FORM)

Institute Cyber Attack Exclusion Clause CL380 dated 10.11.03. as attached.

| 1221 |
| --- |
| Contract Leader |

**MARSH LTD**  PAGE 4 OF 82

CONTRACT NO.
JC662009 (1)

**MARINE & ENERGY PRACTICE**

U.S.A. & CANADA ENDORSEMENT FOR THE INSTITUTE RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL, BIO-CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE 10.11.03

This policy is subject to the Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons Exclusion Clause 10.11.03 (RACCBE). The inclusion of RACCBE in this policy is material to underwriters' willingness to provide coverage at the quoted terms, conditions and rates.

It is the intent of the parties to give maximum effect to RACCBE as permitted by law.

In the event that any portion of RACCBE may be found to be unenforceable in whole or in part under the law of any state, territory, district, commonwealth or possession of the U.S.A., or any province or territory of Canada, the remainder shall remain in full force and effect under the laws of that state, territory, district, commonwealth or possession, province or territory.  Further, any such finding shall not alter the enforceability of RACCBE under the laws of any other state, territory, district, commonwealth or possession of the U.S.A., or any province or territory of Canada, to the fullest extent permitted by applicable law.

USCAN B    29/01/04

CANCELLATION CLAUSE

As per manuscript wording attached.

CESSATION/SUSPENSION OF UNDERWRITING

Other than in respect of War, Strikes, Riots and Civil Commotions Risks, it is hereby noted and agreed that in circumstances where Insurers have ceased or suspended underwriting and wish to amend their participation, notwithstanding the cancellation provisions contained elsewhere in this contract, Insurers' Notice of Cancellation (if given) is deemed to apply to anniversary date (or, where applicable, first review date), unless such Notice is accepted by the Assured as applying to another more specific date.

In all other circumstances, the cancellation provisions contained in any specific contract shall continue to apply.

Subject otherwise to all terms, clauses and conditions as per the attached Manuscript Wording.

| **1221** |
| --- |
| Contract Leader |

U0000029

**MARSH LTD**                                    PAGE 5 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

LOSS PAYEE:              As per wording attached.

SUBJECTIVITIES:          **IN RESPECT OF PIPELINE RISKS:**

                         **IF DEDUCTIBLE OPTION (A) IS REQUIRED, THIS MUST BE
                         DECLARED PRIOR TO ATTACHMENT OF RISK, OTHERWISE
                         OPTION (B) SHALL APPLY.**

CHOICE OF
LAW AND
JURISDICTION:            Institute Service of Suit Clause (U.S.A.) CL355 dated 1.11.92 as
                         attached.

                         This insurance is subject to Texan Law and Practice.

PREMIUM:                 As detailed in the SECURITY DETAILS WRITTEN LINES.

PREMIUM
PAYMENT TERMS:           Premium payable in full on 1st May, 2009.

TAXES PAYABLE
BY THE ASSURED
AND ADMINISTERED
BY INSURERS:             NIL.

PROFIT
COMMISSION:              As per wording attached.

RECORDING,
TRANSMITTING
AND STORING
INFORMATION:             Where the broker maintains risk and claim
                         data/information/documents the broker may hold
                         data/information/documents electronically.

INSURER
CONTRACT
DOCUMENTATION:           This document details the contract terms entered into by the
                         Insurer(s) and constitutes the contract document.

                         The contract change document(s) signed by insurers shall form
                         the evidence of the changes agreed.

                         XIS to sign policy endorsement(s) for attachment to any bureau
                         signed policy.

| 1221 |
|------|
| Contract Leader |

U0000030

**MARSH LTD**                                        **PAGE 6 OF 82**

**CONTRACT NO.**
JC662009 (1)                          **MARINE & ENERGY PRACTICE**

### OCEAN MARINE OPEN CARGO POLICY

### DECLARATIONS

1.   **INSURED:**                     **Astra Oil Company, LLC, Astra Oil Trading N.V.,
                                       AOT Holding Ltd., Astra Oil Company P.T.E. Ltd.,
                                       AOT Trading AG., Transcor Energy S.A. Brussels,
                                       PRSI Trading Company, LP, U.S. Oil Trading LLC
                                       and/or subsidiary and/or associated and/or
                                       affiliated companies and/or interrelated
                                       companies and/or corporations as they now exist
                                       or as may be created and/or constituted and/or as
                                       agents and/or for whom they have instructions to
                                       insure.**

     **ADDRESS OF INSURED:**          **301 Main Street, Suite 201
                                       Huntington Beach, CA 92648**

2.   **LOSS PAYEE:**

     Loss, if any, payable to Astra Oil Company, LLC.

3.   **ATTACHING AND EXPIRY DATES AND DECLARATIONS:**

     To take all insurances attaching hereto during the period from 1st May, 2008 at 12.01 a.m. Local Standard Time to 1st May, 2009 at 12.01 a.m., Local Standard Time at the place shipment commences and on all goods and/or merchandise and/or property in storage at locations insured under this policy.

     The Insured shall report to International Energy Insurance Brokers, Inc. for transmittal to the Insurer hereon,

     within 30 days after the end of each month, or as soon thereafter as may be practicable

     All shipments and/or other risks coming within the terms and conditions of this Policy, and amounts declared, and shall pay the premiums thereon.  Willful failure to so declare or to pay premiums when due shall (at the option of the Company) render this Policy null and void as and from the date of such failure; unintentional failure by the Insured to so report shall not void this Policy and such shipments are held covered subject to policy terms and conditions.

     The Insurer hereon is entitled to premiums, at rates specified, on all shipments and/or other risks covered by this Policy, whether reported or not.

| 1221 |
| --- |
| Contract Leader |

U0000031

**MARSH LTD**                                                    PAGE 7 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

4.    <u>INSURING TERMS AND CONDITIONS:</u>

    (a)    Applicable to all goods and/or merchandise insured hereunder:

| | | |
|---|---|---|
| CAR-001 (1/93) | - | Ocean Marine Cargo Policy |
| CAR-002B (9/1/88) | - | Shortage, Leakage & Contamination |
| CAR-003 (1/93) | - | S.R. & C.C. Endorsement (Form No. 10) |
| CAR-004 (1/93) | - | War Risk Endorsement |
| CAR-007 (8/92) | - | Special Conditions |
| CAR-009 (9/92) | - | Storage Endorsement |
| CAR-011 (11/93) | - | Profit Commission Clause |
| CAR-019 (1/8/02) | - | Termination of Transit (Terrorism) |
| SP-13C | - | Bulk Oil Clauses |

5.    <u>GOODS INSURED:</u>

Lawful goods and merchandise, consisting principally of crude oil and/or petroleum and/or petroleum products and/or liquid chemicals and/or biograde fuels (including biograde diesel and ethanol) of every description shipped in bulk form including, but not limited to, liquefied petroleum gas (LPG) but specifically excluding liquefied natural gas (LNG).

6.    <u>VALUATION (Foreign currency to be converted into U.S. Dollars at rate of exchange current in New York on date of invoice.):</u>

    (i)    Shipments which are sold by the Assured prior to attachment of risk are valued at:

The sum declared, if such declaration is made prior to known or reported loss, but in no event shall such declaration be less than the Assured's selling price;

In the event of no declaration having been made prior to loss, valued at Assured's sales price, plus applicable additional charges.

    (ii)    Shipments which are not sold at time of attachment of risk are valued at:

The sum declared, if such declaration is made prior to loss;

If no declaration is made prior to loss, valued at the higher of either Assured's cost plus expense plus 10% or replacement cost.

    (iii)    Shipments insured on instructions of third parties:

The sum declared if such declaration is made prior to loss;

If no such declaration is made prior to loss, valued at the higher of either the third parties' sale price plus expenses or replacement cost.

| **1221** |
|---|
| Contract Leader |

U0000032

**MARSH LTD**                                          PAGE 8 OF 82

CONTRACT NO.
JC662009 (1)                **MARINE & ENERGY PRACTICE**

---

**7.    LIMITS OF LIABILITY:**

Any one vessel, connecting conveyance or location:

USD200,000,000.00 (or the equivalent in any other currencies), except that in the following cases liability shall be further limited to:

| | |
|---|---|
| USD NIL | while carried on deck and subject to an On Deck Bill of Lading on any one vessel (part of the overall limit per vessel); |
| USD NIL | any one aircraft or connecting conveyance; |
| USD NIL | in respect of any one package shipped by mail; |
| USD1,000,000.00 | any one conveyance in respect of transit via motor truck ad/or rail common carrier |
| USD20,000,000.00 | any one loss, accident or occurrence, in respect of transits by pipeline. |
| USD200,000,000.00 | by any one barge in tow; |
| USD200,000,000.00 | as respects any one unnamed storage location. |

Provided always that with respect to any one extension of the insuring terms and conditions hereunder to include goods while in storage, whether such extension is by separate endorsement or incorporated in this wording, the limit of liability for property located in California is USD200,000,000.00 in the aggregate for each annual period during the term of this policy as respects loss or damage caused by earthquake.

**8.    GEOGRAPHICAL LIMITS:**

Lost or not lost, from ports and/or places in the world to ports and/or places in the world directly or via ports and/or places in any order, including the risk of transshipment by land, air or water and while in storage worldwide ashore or afloat. This insurance specifically covers shipments both originating and terminating on land within any country or continent anywhere in the world.

It is understood and agreed that the policy shall not apply to shipments to or from countries contrary to the laws of the United States of America or any subdivision thereof, or Presidential decrees, or any other United States of America authority.

**U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE**

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

| 1221 |
|---|
| Contract Leader |

U0000033

## MARSH LTD

**PAGE 9 OF 82**

CONTRACT NO.
JC662009 (1)

**MARINE & ENERGY PRACTICE**

9.   **AVERAGE TERMS AND CONDITIONS (AS PER PARAGRAPH (b) OF ITEM 18. OF FORM CAR-001):**

Marine Risks:

A.1.  Per self-propelled Class "A" vessel and/or barge or barges in tow

Per Bulk Oil Clauses (SP-13C) extended to include shortage and/or leakage and/or loss in weight (or volume) and/or contamination howsoever arising. This insurance is subject to the terms and conditions of Form CAR-002B attached hereto.

Deductible Average:

Each claim for loss or damage shall be adjusted separately and from the amount of each adjusted claim a sum equal to .5% of the insured value shall be deducted. Each bill of lading or contract of affreightment shall be deemed to be a separate insurance. Claims for actual or constructive total loss, general average, salvage charges and sue and labor expenses shall be payable in full irrespective of percentage.

A.2. Land transit via pipeline and/or motor truck and/or rail common carrier

10.   **SCHEDULE OF RATES:** Rates scheduled below apply to conveyances, voyages and goods insured hereunder per vessels in the Class Clause per Item 11 of these Declarations:

Covering on:        crude oil and/or petroleum and/or petroleum products and/or liquid chemicals and/or biograde fuels (including biograde diesel and ethanol) of every kind and description shipped in bulk form including, but not limited to, liquefied petroleum gas (LPG) but specifically excluding liquefied natural gas (LNG).

Per self-propelled Class "A" vessel -

| Worldwide | - | .02175% |
|---|---|---|

Per barge or barges in tow of tug or tugs via -

| Inland and/or coastal and/or coastwise waters | - | .02175% |
|---|---|---|
| Pipeline transit (Option "A") | - | .0045% |
| Pipeline transit (Option "B") | - | .0033% |

**IN RESPECT OF PIPELINE RISKS - IF DEDUCTIBLE OPTION (A) IS REQUIRED, THIS MUST BE DECLARED PRIOR TO ATTACHMENT OF RISK, OTHERWISE OPTION (B) SHALL APPLY.**

| **1221** |
|---|
| Contract Leader |

U0000034

| | | |
|---|---|---|
| **CONTRACT NO.** | **MARSH LTD** | **PAGE 10 OF 82** |
| JC662009 (1) | **MARINE & ENERGY PRACTICE** | |

| | | |
|---|---|---|
| Other land transit | - | .0067% |
| Contingent/Difference in Conditions/<br>Guarantee of Collectibility/<br>Seller's Interest: | | |
| Tanker | - | .00625% |
| Barge | - | .00625% |
| Storage risks | - | .01% of values at risk<br>on the last day of each<br>month |

Above rate(s) inclusive of War Risks and SRCC Risks other than surcharged areas or zones (as defined by these Underwriters) which are held covered subject to London scale rates current on date of sailing;

Above rate(s) inclusive of transshipment risks;

Contingent/Difference in Conditions/Guarantee of Collectibility and Seller's Interest Risks included at 50% of the above rates;

Above rate(s) inclusive of steamer additionals and/or penalties subject to the following Classification Clause:

11.   **CLASSIFICATION CLAUSE:**

Per iron or steel steamers or motor vessels Classed A-1 American Record or 100 A-1 Lloyd's Register or equivalent, but excluding vessels built (a) for service on the Great Lakes, or (b) for military or naval service.  Shipments shall be under deck or in containers on or under deck in respect of purpose-built container vessels, or in vans/lighters on or under deck.

**SPECIAL CONDITION:**

Conveyances, voyages and goods insured not set forth above and not excluded elsewhere in this Policy are held covered at rates, terms and conditions to be agreed by the Company, provided the Insured advises the Company and agrees to the Company's terms prior to such attachment of risk.

| **1221** |
|---|
| Contract Leader |

U0000035

**MARSH LTD**                                    PAGE 11 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

12.      **PRODUCER:**

International Energy Insurance Brokers, Inc.
445 South Figueroa Street, 27th Floor
Los Angeles, CA 90071

**Dated:**  May 1, 2008

**Attaching to and Forming Part of Policy No.**  SM4-1368

**Issued to:**  Astra Oil Company, LLC,

**SOUTHERN MARINE & AVIATION**

| **1221** |
| --- |
| Contract Leader |

U0000036

**CONTRACT NO.**
JC662009 (1)

**MARSH LTD**

**MARINE & ENERGY PRACTICE**

PAGE 12 OF 82

### OCEAN MARINE OPEN CARGO POLICY

BY THIS POLICY OF INSURANCE DOES INSURE

(as per Item 1 of the Declarations)

and/or their subsidiary and/or associated and/or affiliated companies and/or for whom they may have instructions to insure,

in consideration of premiums to be paid at rates set forth in the schedules attached hereto.

ATTACHING DATE:

This insurance attaches to shipments made (as per Item 3 of the Declarations).

### NOTE

1.      PLEASE READ YOUR POLICY.

2.      This Policy covers automatically all shipments which come within its scope.  It is important that all shipments be reported as soon as known, and amounts declared as soon as ascertained.

3.      Your attention is called to the Basis of Insured Value as set forth in the VALUATION CLAUSE as per item 6 of the DECLARATIONS page 16 of 82.  The Insured Value should always be in accordance with the basis specified therein, unless otherwise agreed with the Company prior to shipment.

4.      In the event of any known or reported loss or damage, the nearest Claims Agent or Company Representative should be notified immediately to protect the interest of all concerned.

5.      It is a condition of this insurance that the Insured shall act with reasonable dispatch in all circumstances within their control.

### PRODUCER
(as per Item 12 of the Declarations)

Countersigned at__ Houston, Texas __, this_ 1st __ day of__ May ____ 2008 _.

Southern Marine & Aviation - By:_____

| 1221 |
|---|
| Contract Leader |

U0000037

Case 8:10-cv-01029-JAK-MLG   Document 81-2   Filed 09/29/11   Page 32 of 103   Page ID #:1851

### TABLE OF CONTENTS

| | Page | | Page |
|---|---|---|---|
| Air Cargo Shipments | 27 | Labels Clause | 31 |
| Attachment | 15 | Limits of Liability | 17 & 23 |
| Average Terms and Conditions | 28 | Loss Instructions | 2 |
| Bill of Lading Clause | 31 | Loss Payee | 15 & 23 |
| Both to Blame Clause | 30 | Machine Clause | 32 |
| Brands | 39 | Mail Shipments | 27 |
| Brokers | 23 | Mysterious Disappearance | 39 |
| Classification Clause | 2 | Notice of Loss | 37 |
| Cancellation | 27 | Nuclear Exclusion | |
| Carrier Clause | 32 | Clause-Storage Risks | 35 |
| Change of Destination | 32 | On Deck Shipments | 27 |
| Collect Freight Clause | 26 | Other Insurance | 38 |
| Commingled Cargoes | 33 | Paramount Warranties | 34 |
| Consolidation/Repacking | 33 | Partial Loss | 37 |
| Constructive Total Loss Clause | 32 | Payment of Loss | 37 |
| Conveyances | 25 | Perils | 25 |
| Craft Clause | 29 | Process Clause | 32 |
| Dangerous Drugs Clause | 35 | Producer Clause | 20 |
| Deductible Clause | 24 | Radioactive Contamination | |
| Delay Warranty | 34 | Exclusion Clause (with USA End) | 40 |
| Deliberate Damage-Pollution | | | |
| Hazard | 39 | Returned Shipments | 36 |
| Delay Warranty | 34 | Schedule of Rates Clause | 18 |
| Deviation | 26 | Shore Clause | 30 |
| Duty Clause | 26 | South American 60 Day Clause | 36 |
| Duty of Assured | 32 | Special Policy Clause | 27 |
| Errors and Omissions/Deviation | 26 | S.R. & C.C. Warranty | 34 |
| Explosion Clause | 31 | Stock Taking Losses | 39 |
| F.C. & S. Warranty | 34 | Subrogation and | |
| F.P.A. Clause | 30 | Impairment of Recovery | 38 |
| Forwarding Charges | 31 | Sue and Labor | 38 |
| Fumigation Clause | 37 | Time for Suit Clause | 36 |
| General Average Clause | 30 | Under Deck Shipments | 7 |
| Geographical Limits | 17 & 25 | Valuation | 16 & 23 |
| Goods Insured | 16 & 23 | Waiver and/or Release | 33 |
| Inchmaree Clause | 31 | Warehouse Charges | 31 |
| Insolvency | 39 | Warehousing & Forwarding Clause | 31 |
| Inspection of Records | 27 | Warehouse to Warehouse/ | |
| Insurable Interest | 4 & 25 | Transit Clause | 28 |
| Insured | 15 | Chemical, Biological, Bio – | |
| Insuring Terms & Conditions | 16 | Chemical and Electromagnetic | |
| | | Weapons Exclusion Clause | 41 |
| | | Cyber Attack Exclusion Clause | 41 |

| 1221 |
|---|
| Contract Leader |

U0000038

**MARSH LTD**                          PAGE 14 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

BROKERS

It is a condition of this Policy, and it is hereby agreed that the Producer named in Item 12 of the Declarations, or any substituted intermediary, unless a duly authorized agent of this Company, shall be deemed to be exclusively the agents of the Insured and not of this Company in any and all matters retaining to, connected with or affecting this insurance. Any notice given or mailed by or on behalf of this Company to the said Producer in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to the Insured.

In Witness Whereof, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

1.    **FOR ACCOUNT:**

      For account of whom it may concern.

2.    **LOSS PAYEE:**

      Loss, if any, payable to as per Item 2 of the Declarations on page 15 of 82.

3.    **GOODS INSURED:**

      As per Item 5 of the Declarations on page 16 of 82.

4.    **VALUATION:**

      As per Item 6 of the Declarations on page 16 of 82.

5.    **LIMITS OF LIABILITY:**

      As per Item 7 of the Declarations on page 17 of 82.

      For the purposes of this Policy "Location" is defined as any building, tank, dock, wharf, pier, bulkhead (or groups thereof) bounded on all sides by public streets or open waterways or open land space, each of which shall be not less than fifty feet wide (for the purposes of this definition any bridge or tunnel crossing such street or waterway or open space shall render such separation inoperative).

| 1221 |
| --- |
| Contract Leader |

U0000039

## MARSH LTD

**PAGE 15 OF 82**

CONTRACT NO.
JC662009 (1)

**MARINE & ENERGY PRACTICE**

6.   **DEDUCTIBLE CLAUSE:**

Average terms:

(i)     Transit risks via self-propelled vessel and/or barge or barge or barges in tow: per bulk oil clauses (sp-13c) extended to include shortage and/or leakage and/or loss in weight (or volume) and/or contamination howsoever arising subject deductible .5% of the insured value.

(ii)    Transit risks via pipeline: all risks excluding unexplained shortage and/or unexplained loss in weight (or volume) unless directly caused by a fortuitous cause, accident or event.
Deductible option (a) USD5,000
Deductible option (b) USD100,000

**IN RESPECT OF PIPELINE RISKS - IF DEDUCTIBLE OPTION (A) IS REQUIRED, THIS MUST BE DECLARED PRIOR TO ATTACHMENT OF RISK, OTHERWISE OPTION (B) SHALL APPLY.**

(iii)   Motor Truck and/or Rail Common Carrier – USD1,000

(iv)    Storage risks:

Each claim for loss or damage shall be adjusted separately and from the amount of each adjusted claim shall be deducted:

a.      As respects bulk liquids:      .5% of the insured value in each tank;

b.      As respects all other property: To be agreed.

Notwithstanding the foregoing, claims recoverable in respect of actual or constructive total loss and/or Sue and Labor Charges shall be payable in full irrespective of percentage.

Notwithstanding anything to the contrary contained herein, there shall be no coverage under this endorsement for:

(i)     Any of the risks for which coverage is otherwise provided by the War Risks Endorsement, if any, here;

(ii)    Losses occurring through or concerning truck rack sales;

(iii)   Losses occasioned due to the infidelity of or deliberate act against the goods or property intended to be covered under this policy by the Assured, other Named Assureds or Co-Assureds or their employees;

(iv)    Loss or damage due to processing, mixing, blending, refining or preparation;

(v)     Losses in volume that are not accompanied by a corresponding loss in weight;

| **1221** |
| --- |
| Contract Leader |

U0000040

**MARSH LTD**   PAGE 16 OF 82

CONTRACT NO.
JC662009 (1)   **MARINE & ENERGY PRACTICE**

    (vi)    Loss or damage occasioned by inefficiencies of the refinery or any other losses inherent to the normal or abnormal operation of a refinery;

    (vii)    Losses not reported or identified to underwriters within sixty (60) days of the commencement of their occurrence;

    (viii)    Losses occurring systematically or over a period of time unless reported or identified to underwriters within sixty (60) days of the commencement of their occurrence.

**7.   GEOGRAPHICAL LIMITS:**

As per Item 8 of the Declarations on page 17 of 82.

**8.   INSURABLE INTEREST:**

The insurance provided by this Policy shall attach and cover all shipments, not otherwise excluded, in which the Insured has an insurable interest, whether made by or to the Insured, for their own account as principals or as agents for others.

**9.   CONVEYANCES:**

    (a)    Per iron or steel steamers and/or motor vessels and connecting conveyances, by land or otherwise, but excluding sailing vessels with or without auxiliary power except as connecting conveyances;

    (b)    By aircraft and connecting conveyances;

    (c)    By first class or registered mail, ordinary or registered or government insured parcel post, by air or otherwise;

    (d)    By barge or barges in tow of tug or tugs;

    (e)    By land conveyance.

**10.   PERILS:**

Touching the adventures and perils which this Company is contented to bear, and take upon itself, they are of the seas, fire, assailing thieves, jettisons, barratry of the Master or Mariners, and all other like perils, losses and misfortunes (illicit or contraband trade excepted in all cases) that have or shall come to the hurt, detriment or damage of the said goods and merchandise, or any part thereof except as may be otherwise provided for herein or endorsed hereon.

| 1221 |
| --- |
| Contract Leader |

U0000041

34

**MARSH LTD**                                    PAGE 17 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

---

**11.    DUTY AND/OR COLLECT FREIGHT CLAUSE:**

This insurance also covers, subject to policy terms of average, the risk of partial loss
by reason of perils insured against on import duties imposed on goods and
merchandise insured hereunder and collect freight (unless guaranteed or payable
"vessel lost or not lost"), it being understood and agreed, however, that when the risk
upon the goods and merchandise continues beyond the time of landing from the
overseas vessel, the increased value, consequent upon the payment of such duties
and/or freight, shall attach as an additional insurance upon the goods and
merchandise from the time such duties and/or freight are paid or become due, to the
extent of the amounts thereof actually paid or payable.

Any limit of liability expressed in this Policy shall be paramount and shall apply to the
amounts insured by this paragraph and elsewhere in this Policy combined.

The Insured warrants that on all such risks insured hereunder a separate amount shall
be reported sufficient to cover said import duty and/or freight, subject to the limit of this
Policy, and upon which the rate of premium shall be an agreed percentage of the
merchandise rate.

The Insured will, in all cases, use reasonable efforts to obtain abatement or refund of
import duties paid or claimed in respect to goods lost, damaged or destroyed.  It is
further agreed that the Insured shall, when the Company so elects, surrender the
merchandise to the Customs Authorities and recover import duties thereon as
provided by law, in which event the claim under this Policy shall be only for a total loss
of the merchandise so surrendered and expenses.

This insurance on import duty and/or freight shall terminate at the end of the import
movement covered under this Policy (including the Warehouse to Warehouse/Transit
and/or Marine Extension Clauses if incorporated therein) but nothing contained in
these clauses shall alter or affect any coverage granted elsewhere in the Policy during
the storage or transit subsequent thereto.

**12.    ERRORS AND OMISSIONS/DEVIATION:**

This Policy shall not be prejudiced or vitiated by any unintentional delay or omission in
the reporting hereunder or any unintentional error in the amount or description of the
interest, vessel or voyage, or if the subject matter of the insurance be shipped by any
other vessel, or by deviation, over-carriage, change of voyage, transshipment or any
other interruption in the ordinary course of transit, if notice be given the Company as
soon as practicable after said facts become known to the Insured and deficiency of
premium, if any, made good.

| **1221** |
| --- |
| Contract Leader |

U0000042

## MARSH LTD

CONTRACT NO.
JC662009 (1)

**MARINE & ENERGY PRACTICE**

PAGE 18 OF 82

---

**13.   SPECIAL POLICY CLAUSE:**

In order that the Insured may furnish evidence of insurance effected upon shipments covered by this open Policy, authority is hereby granted the Insured to issue and countersign Special Policies or Certificates of Insurance of the Company, with permission to issue in the names of buyers and/or other parties as may be required by the Insured, subject to and in accordance with the terms and conditions of this Policy and such other terms and conditions as may be agreed upon between the Insured and the Company.  The Insured warrants and agrees to mail or deliver to the Company or its Agent copies of all such Special Policies or Certificates of Insurance issued on the day of issuance or as soon thereafter as may be practicable.

**14.   INSPECTION OF RECORDS:**

This Company, or its Agent, shall have the privilege, at any time during business hours, to inspect the records of the Insured as respects to shipments coming within the terms of this Policy.

**15.   CANCELLATION:**

This Policy may be cancelled prior to the expiry date set forth in Item 3 of the Declarations hereto by either party having given the other thirty (30) days' written notice (unless otherwise agreed upon), but such cancellation shall not prejudice any risk or risks which shall have attached at the time said cancellation becomes effective; all risks insured on a time basis and/or at a definite location shall terminate automatically as of the date of such cancellation.

**16.   AIR CARGO AND MAIL SHIPMENTS:**

Shipments by aircraft or mail are insured:  Against all risks of physical loss or damage from any external cause, excluding, nevertheless, the risks of war, strikes, riots, seizure, detention and other risks excluded by the F.C. & S. (Free of Capture and Seizure) Warranty and the S.R. & C.C. (Strikes, Riots and Civil Commotions) Warranty in this Policy, excepting to the extent that such risks are specifically covered by endorsement.  Warranted by the Insured that all packages mailed and insured under the Policy will be mailed in strict conformity with Parcel Post or Foreign Mail Regulations existing at the time of shipment in the country of exportation.

NOTE:       Wherever the words "ship", "vessel", "seaworthiness", "ship or vessel owner" appear in this Policy, the words "aircraft", "airworthiness", "aircraft owner" may be substituted therefor.

| 1221 |
| --- |
| Contract Leader |

U0000043

36

**MARSH LTD**                                              PAGE 19 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

17.  **AVERAGE TERMS AND CONDITIONS:** (for all insured shipments, except as Paragraph 16. aforementioned)

**ON DECK SHIPMENTS**

(a)  ON DECK AND SUBJECT TO AN "ON DECK" BILL OF LADING:  Free of Particular Average unless the vessel or craft be stranded, sunk or burnt, but notwithstanding the foregoing this Company is to pay any loss of or damage to the interest insured which may reasonably be attributed to fire, collision or contact of the vessel and/or craft and/or conveyance with any external substance (ice included) other than water, or to discharge of cargo at port of distress, including jettison and washing overboard.

**UNDER DECK SHIPMENTS**

(b)  EXCEPT WHILE ON DECK AND SUBJECT TO AN "ON DECK" BILL OF LADING:
As per Item 9 of the Declarations on page 18 of 82.

NOTE: In consideration of rates as may be agreed, goods and/or merchandise shipped in containers and/or vans and/or lighters aboard ships are insured subject to the provisions of this Policy applying to under deck shipments even though stowed on deck, provided such shipments are carried under an "optional" Bill of Lading permitting the Carrier to stow containers, vans or lighters under deck or on deck.  Furthermore, coverage afforded under this clause shall include loss of or damage to goods in containers, vans or lighters jettisoned or lost overboard.

18.  **WAREHOUSE TO WAREHOUSE/TRANSIT CLAUSE**

A.  This insurance attaches from the time the goods leave the warehouse or place of storage at the place named in the certificate, declaration or special policy for the commencement of the transit and continues until:

(1)  the goods are delivered to the Consignee's or other final warehouse or place of storage at the destination named in the Certificate, declaration or special policy, or

(2)  the goods are delivered to any other warehouse or place of storage, whether prior to or at the destination named in the certificate, declaration or special policy, which the Insured elects to use either

(a)  for storage other than in the ordinary course of transit, or

(b)  for allocation or distribution, or

(3)  the expiry of 60 days (30 days on air shipments) after completion of discharge from the overseas vessel or aircraft.

| 1221 |
| --- |
| Contract Leader |

U0000044

whichever shall first occur.

In the event of delay in excess of the limits specified in (3) above arising from circumstances beyond the control of the Insured, held covered at a premium to be named for an additional 30 days provided the Insured give notice thereof to the Company as promptly as possible but in any event prior to the expiry of the said 30 days period.

B.      This insurance specially to cover the goods during deviation, delay, forced discharge, re-shipment, transshipment and any other variation of the adventure arising from the exercise of a liberty granted to the shipowner or charterer under the contract of affreightment.

C.      In the event of the exercise of any liberty granted to the shipowner or charterer under the contract of affreightment whereby such contract is terminated at a port or place other than the original insured destination, the insurance continues until the goods are sold and delivered at such port or place; or, if the goods be not sold but are forwarded to the original insured destination or to any other destination this insurance continues until the goods have been delivered to the warehouse or place of storage as provided in paragraph 18.A.

D.      If while this insurance is still in force and before the expiry of 15 days from midnight of the day on which the discharge overside of the goods hereby insured from the overseas vessel at the final port of discharge is completed, the goods are re-sold (not being a sale within the terms of paragraph 18.C.) and are to be forwarded to a destination other than that covered by this insurance, goods are covered hereunder while deposited at such port of discharge until again in transit or until the expiry of the aforementioned 15 days whichever shall first occur.  If a sale is effected after the expiry of the aforementioned 15 days while this insurance is still in force the protection afforded hereunder shall cease as from the time of the sale.

E.      Interests are covered at cover conditions but at a premium to be agreed in case of change of voyage or of any omission or error in the description of the interest, vessel or voyage.

F.      It is a condition of this insurance that there shall be no interruption or suspension of transit unless due to circumstances beyond the control of the Insured and that the Insured shall act with reasonable dispatch in all circumstances within their control.

19.     **CRAFT CLAUSE:**

Including transit by craft and/or lighter to and from the vessel.  Each craft and/or lighter to be deemed a separate insurance.  The Insured are not to be prejudiced by any agreement exempting lightermen from liability.

| 1221 |
|---|
| Contract Leader |

U0000045

## MARSH LTD

PAGE 21 OF 82

CONTRACT NO.
JC662009 (1)

**MARINE & ENERGY PRACTICE**

**20.   F.P.A. CLAUSE:**

Warranted free from Particular Average unless the vessel or craft be stranded, sunk, or burnt, but notwithstanding this Warranty this Insurer is to pay any loss of or damage to the interest insured which may reasonably be attributed to fire, collision or contact of the vessel and/or craft and/or conveyance with any external substance (ice included) other than water, or to discharge of cargo at port of distress.  **The foregoing Warranty, however, shall not apply where broader terms of Average are provided for hereon or in the certificate, declaration or special policy to which these clauses are attached.**

**21.   GENERAL AVERAGE CLAUSE:**

This insurance covers general average and salvage charges, adjusted or determined according to the contract of affreightment and/or the governing law and practice (or, if there is no contract of affreightment, according to Foreign Statement or to York-Antwerp Rules) incurred to avoid or in connection with the avoidance of loss from any cause except those specifically excluded herefrom.

For the purpose of claims for general average contributions and salvage charges recoverable hereunder, the subject matter insured shall be deemed to be insured for its full contributory value.

General average deposits shall be payable on production of general average deposit receipts.

**22.   BOTH TO BLAME CLAUSE:**

Where goods are shipped under a Bill of Lading containing so-called "Both to Blame Collision" Clause, the Company agrees, as to all losses covered by this insurance, to indemnify the Insured for this Policy's proportion of any amount (not exceeding the amount insured) which the Insured may be legally bound to pay to the shipowners under such clause.  In the event that such liability is asserted the Insured agree to notify the Company who shall have the right, at its own cost and expense, to defend the Insured against such claim.

**23.   NOTWITHSTANDING ANY AVERAGE WARRANTY CONTAINED HEREIN:**

**SHORE CLAUSE**

A.   Where this insurance by its terms covers while on docks, wharves or elsewhere on shore, and/or during land transportation, it shall include the risks of collision, derailment, overturning or other accident to the conveyance, fire, lightning, sprinkler leakage, cyclones, hurricanes, earthquakes, floods (meaning the rising of navigable waters), and/or collapse or subsidence of docks or wharves.

| 1221 |
| --- |
| Contract Leader |

U0000046

**MARSH LTD**                    PAGE 22 OF 82

CONTRACT NO.
JC662009 (1)          **MARINE & ENERGY PRACTICE**

EXPLOSION CLAUSE

B.    This insurance includes the risk of explosion, howsoever or wheresoever
occurring during the currency of this insurance, unless excluded by the F.C. &
S. Warranty or the S.R. & C.C. Warranty set forth herein.

WAREHOUSING & FORWARDING CLAUSE

C.    The Company agrees to pay any landing, warehousing, forwarding and special
charges for which this Policy in the absence of such warranty would be liable.
Also to pay the insured value of any package or packages which may be totally
lost in loading, transshipment or discharge.

INCHMAREE CLAUSE

D.    This insurance is also specially to cover any loss of or damage to the interest
insured hereunder including but not limited to shortage, leakage and/or
contamination caused by accidents in bunkering, taking on fuel, or caused
through the bursting of boilers, breakage of shafts, or through any latent defect
in the machinery, hull or appurtenances, or from faults or errors in the
navigation and/or management of the vessel or cargo, also including risks of
negligence, default, or error in the judgement of or by the master, mariners,
mates, engineers, pilots, crew or stevedores, or other persons employed by the
shipowner or for whose acts he is responsible.

24.    **BILL OF LADING CLAUSE:**

The Insured is not to be prejudiced by the presence of the negligence clause and/or
latent defect clause in the Bills of Lading and/or Charter Party.  The seaworthiness of
the vessel as between the Insured and the Company is hereby admitted and the
wrongful act or misconduct of the shipowner or his servants causing a loss is not to
defeat the recovery by an innocent Insured if the loss in the absence of such wrongful
act or misconduct would have been a loss recoverable on the Policy. With leave to sail
with or without pilots, and to tow and assist vessels or craft in all situations, and to be
towed.

25.    **LABELS CLAUSE:**

In case of damage affecting labels, capsules or wrappers, the Company, if liable
therefor under the terms of this Policy, shall not be liable for more than an amount
sufficient to pay the cost of new labels, capsules or wrappers, and the cost of
reconditioning the goods, but in no event shall the Company be liable for more than
the insured value of the damaged merchandise.

| 1221 |
| --- |
| Contract Leader |

U0000047

**MARSH LTD**                                      PAGE 23 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

---

26.   **MACHINE CLAUSE:**

When the property insured under this Policy includes a machine consisting when complete for sale or use of several parts, then, in case of loss or damage covered by this insurance to any part of such machine, the Company shall be liable only for the proportion of the insured value of the part lost or damaged, or at the Insured's option, for the cost and expense, including labor and forwarding charges, of replacing or repairing the lost or damaged part, excluding loss, if any, sustained by payment of additional duty unless the full duty is included in the amount insured; but in no event shall the Company be liable for more than the insured value of the complete machine.

27.   **CONSTRUCTIVE TOTAL LOSS CLAUSE:**

No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value if the expenditure had been incurred.

28.   **DUTY OF ASSURED:**

It is the duty of the Insured and their Agents, in all cases, to take such measures as may be reasonable for the purpose of averting or minimizing a loss and to ensure that all rights against carriers, bailees or third parties are properly preserved and exercised.

29.   **CARRIER CLAUSE:**

Warranted that this insurance shall not inure, directly or indirectly, to the benefit of any carrier or bailee.

30.   **CHANGE OF DESTINATION:**

In case of change of destination, as set forth in the original report of insurance, the merchandise is covered with the Insured agreeing to report all changes to this Company.

31.   **PROCESS CLAUSE:**

Notwithstanding anything to the contrary contained herein, it is understood and agreed that coverage provided does not insure against loss, damage, claim or expense caused by or resulting from processing unless fire or explosion ensues, and then coverage hereunder shall be limited to the loss or damage caused by the ensuing fire or explosion.

| 1221 |
| --- |
| Contract Leader |

U0000048

**MARSH LTD**                         PAGE 24 OF 82

CONTRACT NO.
JC662009 (1)                  **MARINE & ENERGY PRACTICE**

32.  **COMMINGLED CARGOES:**

When shipments in bulk insured hereunder are stowed in such a manner as to be commingled with other bulk shipments belonging to and/or insured by others or owned by the Insured but intended for different consignees, it is agreed that in the event of loss or damage caused by a peril insured against, such loss or damage shall be pro-rated in accordance with the respective interest(s) of the party or parties involved in the ratio that the quantity or product belonging to each party bears to the total quantity of product commingled.

It is hereby understood and agreed that the provisions of this clause are to apply to the product insured hereunder regardless of whether or not other owners' or their Underwriters' interest in the other shipments so carried shall have made a similar agreement.

33.  **CONSOLIDATION/REPACKING:**

Notwithstanding anything contained elsewhere herein to the contrary (particularly the Warehouse to Warehouse/Transit Clause), this insurance is extended to cover the property insured hereunder wherever same is stopped in transit, anywhere in the world, short of final destination, for the purpose of consolidation, deconsolidation, packing, repacking, containerization, decontainerization, distribution, redistribution, or otherwise subject to the insuring conditions set forth in Clause 17 (Average Terms and Conditions).

34.  **WAIVER AND/OR RELEASE:**

Privilege is given the Insured to accept contracts of carriage, charters and/or Bills of Lading and/or receipts, from common carriers and/or owners and/or operators of tugs, barges and/or lighters or terminals, when acting as a connecting conveyance, provided such acceptance is made prior to any known or reported loss or accident. Privilege is also granted the Insured to execute railroad sidetrack agreements with or without a release of liability.

In consideration of additional premium to be agreed, the Insured is granted the privilege of accepting contracts of carriage, charters and/or Bills of Lading from owners and/or operators of tugs, barges and/or lighters involved in a sea passage.

Any contracts of carriage, charters and/or Bills of Lading and/or receipts which the Insured accepts in accordance with the foregoing may contain usual warranties and/or releases of liabilities except when accepted from a common carrier in which event the privilege given or granted to the Insured set forth above applies only to the acceptance of any such contracts, charters, Bills and/or receipts which do not contain either a waiver or a release.

| 1221 |
| --- |
| Contract Leader |

U0000049

**MARSH LTD**  PAGE 25 OF 82

CONTRACT NO.
JC662009 (1)   **MARINE & ENERGY PRACTICE**

---

37. **The following Warranties shall be paramount and shall not be modified or superseded by any other provision included herein or stamped or endorsed hereon unless such other provision refers specifically to the risks excluded by these Warranties and expressly assumes the said risks:**

**F.C. & S. WARRANTY**

(A)   Notwithstanding anything herein contained to the contrary, this insurance is warranted free from capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise; also warranted free, whether in time of peace or war, from all loss, damage or expense caused by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter or by any mine or torpedo, also warranted free from all consequences of hostilities or warlike operations (whether there be a declaration of war or not), but this Warranty shall not exclude collision or contact with aircraft, rockets or similar missiles or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purposes of this Warranty "power" includes any authority maintaining naval, military or air forces in association with a power.

Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy.

**S.R. & C.C. WARRANTY**

(B)   Warranted free of loss or damage caused by or resulting from strikes, lockouts, labor disturbances, riots, civil commotions or the acts of any person or persons taking part in any such occurrence or disorder.

**DELAY WARRANTY**

(C)   Warranted free of claim for loss of market or for loss, damage or deterioration arising from delay, whether caused by a peril insured against or otherwise.

| 1221 |
|---|
| Contract Leader |

U0000050

**MARSH LTD**                                    **PAGE 26 OF 82**

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

---

38. **NUCLEAR EXCLUSION CLAUSE (April 1, 1991):**

    THIS CLAUSE SHALL BE PARAMOUNT AND SHALL OVERRIDE ANTHING CONTAINED IN THIS INSURANCE TO THE CONTRARY:

    Notwithstanding anything to the contrary herein, it is hereby understood and agreed that this policy shall not apply to any loss, damage or expense due to or arising out of, whether directly or indirectly, nuclear reaction, radiation, or radioactive contamination, regardless of how it is caused.  However, subject to all provisions of this policy, if this policy is insures against fire, then direct physical damage to the property insured located within the United States, or any territory of the United States or Puerto Rico by fire directly caused by the above excluded perils, is insured, provided that the nuclear reaction, radiation, or radioactive contamination was not caused, whether directly or indirectly, by any of the perils excluded by the F.C.&S. Warranty of this policy.

39. **INSTITUTE DANGEROUS DRUGS CLAUSE:**

    It is understood and agreed that no claim under this Policy will be paid in respect of drugs to which the various International Conventions relating to Opium and other dangerous drugs apply unless

    (1)    the drugs shall be expressly declared as such in the Policy and the name of the country from which, and the name of the country to which, they are consigned shall be specifically stated in the Policy and

    (2)    the proof of loss is accompanied either by a license, certificate or authorization issued by the Government of the country to which the drugs are consigned showing that the importation of the consignment into that country has been approved by that Government, or, alternatively, by a license, certificate or authorization issued by the Government of the country from which the drugs are consigned showing that the export of the consignment to the destination stated has been approved by that Government; and

    (3)    the route by which the drugs were conveyed was usual and customary.

| 1221 |
| --- |
| Contract Leader |

U0000051

**MARSH LTD**                                  PAGE 27 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

---

**40.  SOUTH AMERICAN 60 DAY CLAUSE (December 1, 1948):**

With respect to shipments of goods and merchandise insured in U.S. Currency and shipped to South America, notwithstanding anything contained elsewhere herein to the contrary (particularly the Warehouse to Warehouse/Transit Clause), the insurance provided hereunder shall continue to cover sixty (60) days (ninety [90] days on shipments via the Magdalena River) after completion of discharge of the overseas vessel at port of destination or until the goods are delivered to the final Warehouse at destination, whichever shall first occur, and shall then terminate.

The time limit referred to above to be reckoned from midnight of the day on which the discharge of the overseas vessel is completed.

**OTHER TERMS AND CONDITIONS**

**41.  TIME FOR SUIT CLAUSE:**

No suit or action on this Policy, for the recovery of any claim, shall be sustainable in any Court of Law or Equity unless the Insured shall have fully complied with all the terms and conditions of this Policy, nor unless commenced within twelve months next after the happening of the loss, provided that where such limitation of time is prohibited by the laws of the State wherein this Policy is issued, then and in that event no suit or action under this Policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such State.

**42.  RETURNED SHIPMENTS:**

(a)  RETURNED GOODS PRIOR TO DELIVERY:  Goods and merchandise insured hereunder which, prior to delivery by ocean carriers, are ordered returned to the original point of shipment, are to be insured hereunder, subject to the same terms and conditions as the original insurance, at additional premium to be agreed.

(b)  RETURNED GOODS CONTINUOUSLY INSURED:  This Policy of insurance also covers shipments of returned goods and merchandise which have been continuously insured hereunder, subject to the same terms and conditions as the original export insurance, at additional premium to be agreed.

| 1221 |
| --- |
| Contract Leader |

U0000052

(c)   OTHER RETURNED GOODS:  Returned goods and merchandise other than as defined in (a) or (b) are insured:  Free of Particular Average unless the vessel or craft be stranded, sunk or burnt, but notwithstanding the foregoing this Company is to pay any loss of or damage to the interest insured which may reasonably be attributed to fire, collision or contact of the vessel and/or craft and/or conveyance with any external substance (ice included) other than water, at additional premium to be agreed, otherwise subject to all other terms and conditions of this Policy.

### 43.   FUMIGATION CLAUSE:

The Company will indemnify the Insured for loss or damage to the insured goods or merchandise directly resulting from fumigation of the vessel while the insured property is on board.

### 44.   NOTICE OF LOSS:

In case of loss or damage to the goods or merchandise insured hereunder, same shall be reported immediately as soon as the goods or merchandise are landed, or the loss is known or expected, to the nearest Office of the Company or Lloyd's Agent.

### 45.   PAYMENT OF LOSS:

In case of loss, such loss to be paid in thirty days after proof of loss and proof of interest in the goods or merchandise hereby insured and adjustment thereof have been filed with the Company.  Proofs of loss to be authenticated by the Agent of the Company, if there be one where such proofs are taken, otherwise, by a Lloyd's Agent, but if neither is represented where such proofs are taken, then by some other recognized Insurance Authority.  The amount of the premium, if unpaid, and all sums due to the Company from the Insured shall first be deducted from any amount due the Insured.

### 46.   PARTIAL LOSS:

In case of partial loss by perils insured against, the proportion of loss shall be determined by a separation at Insured's expense of the damaged portion of the insured goods or merchandise from the sound and by agreed estimate (by survey) of the percentage of damage on such portion; or if such agreement is not practicable, then by public sale of such damaged portion for the account of the owner of the goods and merchandise and by comparison of the amount so realized with the sound market value on the day(s) of sale.

| 1221 |
| --- |
| Contract Leader |

U0000053

**MARSH LTD**                                    PAGE 29 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

**47.    SUE AND LABOR:**

In case of any loss or misfortune, it shall be lawful and necessary to and for the Insured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the goods and merchandise, or any part thereof, without prejudice to this insurance; the reasonable expenses so incurred shall be borne by the Insured and the Company in proportion as the sum hereby insured bears to the whole value at risk; nor shall the acts of the Insured or the Company in recovering, saving and preserving the goods and merchandise insured in case of disaster be considered a waiver or an acceptance of abandonment.

**48.    SUBROGATION AND IMPAIRMENT OF RECOVERY:**

It is a condition of this insurance that upon payment of any loss the Company shall be subrogated to all rights and claims against third parties arising out of such loss.  In case of any agreement or act or omission by the Insured prior or subsequent thereto, whereby any right of recovery of the Insured for loss of or damage to any property insured hereunder, against any Carrier or Bailee, is released, impaired or lost, which would on acceptance of abandonment or payment of a loss by this Company have inured to its benefit but for such agreement or act or omission, this Company shall not be bound to pay any loss, but its right to retain or recover the premium shall not be affected.

The Company agrees to waive all rights of subrogation against the Insured in respect of their interest as Charterers.

**49.    OTHER INSURANCE:**

In case the interest hereby insured is covered by other insurance (except as otherwise provided hereinafter) the loss shall be recoverable under the several policies in the order of the date of their attachment, except that insurance attaching on the same date shall be deemed simultaneous and shall contribute pro rata.  Provided, however, that where any fire insurance or any insurance (including fire) taken out by the Insured or any carrier or bailee is available to the beneficiary of this Policy, or would be so available if this Policy had not been issued, then any insurance granted herein shall be void to the extent that such other insurance is or would be available.  It is agreed, nevertheless, that where the Company is thus relieved of liability because of the existence of such other insurance, the Company shall receive and retain the premium payable under this Policy and, in consideration thereof, shall guarantee the solvency of the companies or underwriters who issued such other insurance and the prompt collection of the loss thereunder to the same extent (only) as the Company shall have been relieved of liability under the terms of this clause, but not exceeding, in any case, the amount which would have been collectible under this Policy if such other insurance did not exist.

| **1221** |
| --- |
| Contract Leader |

U0000054

**MARSH LTD**                          PAGE 30 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

50.   **INSOLVENCY:**

In no case shall this insurance cover loss, damage or expense arising from insolvency or financial default of the owners, managers, charterers or operators of the vessel where the Insured is unable to show that, prior to the loading of the subject-matter insured on board the vessel, all reasonable, practicable and prudent measures were taken by the Insured, their servants and agents, to establish the financial reliability of the party in default.

51.   **DELIBERATE DAMAGE - POLLUTION HAZARD:**

This Policy is extended to cover, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under the Policy (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence.

This clause shall not increase the Limits of Liability provided for in Clause 5 of this Policy.

52.   **BRANDS:**

In case of damage to property bearing a Brand or Trade Mark, or the sale of which carries or implies a guarantee of the supplier or Insured, the salvage value of such damaged property shall be determined after the removal of all Brands or Trade Marks. On containers where the Brand or Trade Mark cannot be removed, the contents shall be transferred to plain bulk containers.  With respect to any merchandise and/or containers where it is impractical to destroy all evidence of the Insured's connection therewith, the Company agrees to consult and cooperate with the Insured with respect to the disposition of said merchandise and/or containers.

53.   **MYSTERIOUS DISAPPEARANCE & STOCK TAKING LOSSES:**

This policy does not include losses attributed to mysterious disappearance and/or stock taking, and/or shortage disclosed upon taking inventory.

| 1221 |
| --- |
| Contract Leader |

U0000055

**MARSH LTD**                    PAGE 31 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

---

54.   **RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE (WITH U.S.A. ENDORSEMENT):**

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

1.   In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

   1.1   ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

   1.2   the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

   1.3   any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

   1.4   the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

2.   Paragraph 1. above applies provided that:

   if fire is an insured peril

   and

   where the subject matter insured is within the U.S.A., its islands, onshore territories or possessions

   and

   a fire arises directly or indirectly from one or more of the causes detailed in sub-clauses 1.1 and 1.2 above,

   any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation or radioactive contamination arising directly or indirectly from that fire.

| 1221 |
| --- |
| Contract Leader |

U0000056

**MARSH LTD**                    PAGE 32 OF 82

CONTRACT NO.
JC662009 (1)                **MARINE & ENERGY PRACTICE**

55.  **CHEMICAL, BIOLOGICAL, BIO–CHEMICAL, AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE:**

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

1.  In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

1.1  any chemical, biological, bio-chemical or electromagnetic weapon

56.  **INSTITUTE CYBER ATTACK EXCLUSION CLAUSE (CL 380) 10/11/03**

1.1  Subject only to clause 1.2 below, in no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, malicious code, computer virus or process or any other electronic system.

1.2  Where this clause is endorsed on policies covering risks of war, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power, or terrorism or any person acting from a political motive, Clause 1.1 shall not operate to exclude losses (which would otherwise be covered) arising from the use of any computer, computer system or computer software programme or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.

| 1221 |
| --- |
| Contract Leader |

U0000057

**MARSH LTD**                                    PAGE 33 OF 82

CONTRACT NO.
JC662009 (1)                     **MARINE & ENERGY PRACTICE**

### INSTRUCTIONS IN CASE OF LOSS

In case of loss or damage which may become a claim under this Policy follow these instructions to protect your insurance claim and facilitate adjustment thereof:

**PROMPTLY REPORT LOSS OR DAMAGE** to the nearest Lloyd's Agent or office of the Company at the port or place where the loss or damage is discovered.

**TAKE PROPER EXCEPTIONS** on the delivery receipt when any loss or damage is apparent at time of taking delivery.

**FILE CLAIM IN WRITING** against the delivering carrier holding him responsible as soon as loss or damage is discovered even though the full extent thereof is not apparent; details can be furnished later.  Such action will not prejudice your insurance claim.

**COLLECT COMPLETE DOCUMENTS** in support of your insurance claim, consisting of:

- Original or Duplicate of Special Cargo Policy or Certificate of Insurance if issued, properly endorsed by the payee; in case of shipments not covered by a Special Cargo Policy or Certificate of Insurance please refer to Declaration or Monthly Report under which the shipment has been declared to this Company.

- Claim Agent's Certificate or Survey Report.

- Certificate of Condition, when issued, by Customs, Port or Terminal Authority or Carrier.

- Copies of delivery receipts with proper exceptions of loss or damage noted thereon.

- Copy of written claim against Carrier or other parties with their reply when available.

- Original or certified copy of shipper's invoice(s) covering the entire shipment insured.

- Original or certified copy of bill(s) of lading covering the entire shipment insured, including transhipment bill(s) of lading, freight note(s), and/or way bill(s) when applicable.

- Bills for repairs, reconditioning or other expenditures and such other proofs of loss as may be required in each specific case.

| 1221 |
| --- |
| Contract Leader |

U0000058

**MARSH LTD**                    PAGE 34 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

**HAVE CLAIMS AGENT AUTHENTICATE** all proofs of loss and forward the complete documents without delay to the Company or its nearest Settling Agent.

Dated:  May 1, 2008

**Attaching to and Forming Part of Policy No.**  SM4-1368

**Issued to:**  Astra Oil Company, LLC,

**SOUTHERN MARINE & AVIATION**

**BY:**_____

1221

Contract Leader

U0000059

**MARSH LTD**                                     PAGE 35 OF 82

CONTRACT NO.
JC662009 (1)                     **MARINE & ENERGY PRACTICE**

### SHORTAGE, LEAKAGE AND CONTAMINATION ENDORSEMENT

**THIS INSURANCE ALSO COVERS:**

Loss due to shortage and/or leakage and/or contamination howsoever arising, provided, however, that such claims are payable only in excess of .5% of the insured value of the whole shipment, each vessel.

But excluding, nevertheless, the risks of war, strikes, riots, seizure, detention and other risks excluded by the F.C. & S. (Free of Capture & Seizure) Warranty and the S.R. & C.C. (Strikes, Riots and Civil Commotions) Warranty in this policy, excepting to the extent that such risks are specifically covered by endorsement.

**Provided** there has been full compliance with the following warranties and conditions:

1.    (A)    In respect of Bulk Crude Oil shipments only:

       **Prior to loading** - warranted that the vessel's cargo tanks and loading facilities be examined and approved by a Surveyor, who shall issue a certificate attesting to the suitability thereof to carry the proposed cargo;

      (B)    In respect of all other Bulk Liquid shipments:

       **\*Prior to loading** - warranted that the vessel's cargo tanks and loading facilities be cleaned, examined and approved by a Surveyor, who shall issue a certificate to this effect.

       \*Reference to cleaning of tanks is hereby deleted when it is standard practice in the industry not to clean tanks or when it is not practicable or unreasonable to do so.

2.    **At time of, and during, loading** - Warranted that careful measurements as to gauge, weight and temperature of the separable components of the shipment be made and certified to by a Surveyor, who shall also supervise loading and repeat (and certify to) such measurements as frequently as he deems necessary and desirable.

3.    **Prior to, and during, discharge** - Warranted that careful measurements as to gauge, weight and temperature of the separable components of the shipment be made and certified to by a Surveyor, who shall also supervise outturn and repeat (and certify to) such measurements as frequently as he deems necessary and desirable.

4.    **Connecting Conveyances** - Warranted that where, by the terms of this insurance, coverage begins in, or continues in, tank trucks, tank cars, tank barges, other tank vessels or pipe lines other than those of the principal carrier, the requirements named herein with respect to cleaning, examining, gauging, weighing, taking of temperature, supervision and certification be applicable as if the connecting conveyance, or pipe line, were the principal carrier.

| 1221 |
| --- |
| Contract Leader |

U0000060

**MARSH LTD**                    **PAGE 36 OF 82**

CONTRACT NO.
JC662009 (1)                     **MARINE & ENERGY PRACTICE**

5. **Shortage and/or leakage losses** - It is understood and agreed that the measure of loss due to shortage and/or leakage, if covered hereunder, shall be determined by a comparison of:

   The survey or surveys made at points of origin with the survey or surveys made at point of destination, subject always to the deductible, unless such loss is as a result of a peril or perils enumerated above wherein no deductible shall apply.

6. **Contamination Losses** - It is understood and agreed that a loss due to contamination, if covered hereunder, shall be verified by a test or tests made by a chemist, and the measure of loss, based on the findings in such a test or tests, shall be the actual cost of reconditioning (including all expenses incidental thereto), loss of weight, and also depreciation on such portion or portions as cannot reasonably be restored to original condition.

7. **Definition and Fees** - It is further understood and agreed that where reference is made to "Surveyor" or "Chemist", such reference shall be deemed qualified by "approved by this Company". All fees, however, shall be at the expense of the Insured, except that, in the event of loss, this Company shall be liable for the cost of surveys and tests necessary to determine the amount of claim hereunder.

**Dated:** May 1, 2008

**All Other Terms and Conditions Remaining Unchanged.**

**Attached To and Made a Part of Policy No.** SM4-1368

**Issued to:** Astra Oil Company, LLC,

**SOUTHERN MARINE & AVIATION**

**BY:**_____

| 1221 |
|------|
| **Contract Leader** |

U0000061

**MARSH LTD**                                    PAGE 37 OF 82

CONTRACT NO.
JC662009 (1)              **MARINE & ENERGY PRACTICE**

---

### ENDORSEMENT

### STRIKES, RIOTS, & CIVIL COMMOTIONS (DECEMBER 2, 1993)
### S.R. & C.C. ENDORSEMENT (FORM NO. 10)

THIS INSURANCE ALSO COVERS:

(1) physical loss of or damage to the property insured directly caused by strikers, locked-out workmen, or persons taking part in labor disturbances or riots or civil commotions; and,

(2) physical loss of or damage to the property insured directly caused by vandalism, sabotage or malicious acts, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional; PROVIDED that any claim to be recoverable under this sub-section (2) be not excluded by the F.C. & S. Warranty in the Policy to which this endorsement is attached.

While the property insured is at risk under the terms and conditions of this insurance within the United States of America, the Commonwealth of Puerto Rico, the U.S. Virgin Islands and Canada, this insurance is extended to cover physical loss of or damage to the property insured directly caused by acts committed by an agent of any government, party or faction engaged in war, hostilities or other warlike operations, provided such agent is acting secretly and not in connection with any operation of military or naval armed forces in the country where the described property is situated.

Nothing in this endorsement shall be construed to cover any loss, damage or expense directly or indirectly arising from, contributed to or caused by any of the following, whether due to a peril insured against or otherwise:

a. change in temperature or humidity;
b. the absence, shortage, or withholding of power, fuel, or labor of any description whatsoever during any strike, lockout, labor disturbance, riot or civil commotion;
c. loss of market or loss, damage or deterioration arising from delay;
d. hostilities, warlike operations, civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, except to the limited extent that the acts of certain agents acting secretly have been expressly covered above; or,
e. nuclear reaction, radiation or radioactive contamination.

1221

Contract Leader

U0000062

**MARSH LTD**     PAGE 38 OF 82

CONTRACT NO.
JC662009 (1)          **MARINE & ENERGY PRACTICE**

The Assured agrees to report all shipments attaching under this cover and to pay premiums
therefor at the rates established by the Assurer from time to time.

This endorsement may be cancelled by either party upon forty-eight hours written,
telegraphic or telefaxed notice to the other party, but such cancellation shall not affect any
risks which have already attached hereunder.

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

**Dated:** May 1, 2008

**All Other Terms and Conditions Remaining Unchanged.**

**Attached To and Made a Part of Policy No.** SM4-1368

**Issued To:** Astra Oil Company, LLC,

**SOUTHERN MARINE & AVIATION**

**BY:**_____

1221

Contract Leader

U0000063

**MARSH LTD**                    PAGE 39 OF 82

**CONTRACT NO.**
JC662009 (1)          **MARINE & ENERGY PRACTICE**

AMERICAN INSTITUTE
WAR RISK ONLY OPEN POLICY
(CARGO) (DECEMBER 2, 1993)

THIS POLICY OF INSURANCE WITNESSETH, that in consideration of premiums as agreed to be paid, the Assurer does make Insurance and cause
**Astra Oil Company, LLC,**
to be insured, lost or not lost, for account of whom it may concern, against War Risks only, in accordance with the terms and conditions hereinafter set forth.

To apply to shipments made on or after **May 1, 2008**
This Company shall not be liable hereunder for more than **USD200,000,000.00** by any one vessel.

In cases where the total value(s) at risk on any one vessel exceed(s) the limit of liability as set forth in this Policy, the Assured agrees, nevertheless, to report to the Assurer full value(s) at risk and to pay premium thereon at the agreed rates. The Assured further agrees that acceptance of such reports and premium by the Assurer shall not serve to revoke or to overrule the limit of liability set forth in this Policy; however, subject to the limit of liability, the Assurer in accepting these reports does agree to pay partial losses covered by this Policy without reduction by reason of any coinsurance which otherwise may have existed in the absence of this special agreement.

Subject to the provisions of Clause 4 of this Policy, should there be an accumulation of interests exceeding the above limit of liability by reason of any interruption of transit beyond the control of the Assured or by reason of any casualty, and/or after the interests have been discharged from the incoming overseas Vessel at an intermediate port or place for on-carriage from that or any other port or place by another overseas Vessel, and/or on the on carrying overseas Vessel, this Policy shall attach for the full amount at risk (but in no event for more than twice the Policy limit which would be applicable to any one Vessel) provided written notice be given to this Assurer as soon as known to the Assured.

This Policy shall cover only those shipments which are insured against marine risks under Marine Policy No. _____SMA 1368_____ of this Company, it being agreed that the description of such shipments, the valuations thereof, the voyage, the designation of the overseas Vessel (which shall be construed to include aircraft if included under the marine policy) on which the goods are to be carried and the ports and/or places of loading and discharge, as reported under the said Policy against marine risks, shall be deemed incorporated herein. Notwithstanding the foregoing, this policy shall not cover purely domestic shipments by air between points in the United States of America (excluding Alaska and Hawaii).

1221

Contract Leader

U0000064

**MARSH LTD**                                    PAGE 40 OF 82

CONTRACT NO.
JC662009 (1)          **MARINE & ENERGY PRACTICE**

Any loss payable hereunder shall be payable in funds current in the United States, to the order of Astra Oil Company, LLC,  or order.

1.   (a)   This insurance is only against the risks of capture, seizure, destruction or damage by men-of-war, piracy, takings at sea, arrests, restraints, detainments and other warlike operations and acts of kings, princes and peoples in prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, or civil strife arising therefrom; the imposition of martial law, military or usurped power, and including the risks of aerial bombardment, floating or stationary mines and stray or derelict torpedoes. Warranted not to abandon (on any ground other than physical damage to ship or cargo) until after condemnation of the property Insured.

     (b)   This insurance also covers, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under this Policy (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss of damage as a direct result of such accident or occurrence.

2.        Warranted free from any claim based upon loss of, or frustration of, the insured voyage or adventure caused by arrests, restraints or detainments.

3.        This Insurance does not cover any loss, damage or expense directly or indirectly arising from, or contributed to, or caused by any of the following, whether due to a peril insured against or otherwise.

     (a)   Commandeering, preemption, requisition or nationalization by the government (defector or otherwise) of the country to or from which the goods are insured.

     (b)   Seizure or destruction under quarantine, environmental or customs regulations.

     (c)   Delay, deterioration and/or loss of market.

     (d)   Nuclear Reaction, radiation or radioactive contamination, regardless of how it was caused.

```
1221

Contract Leader
```

U0000065

## MARSH LTD

CONTRACT NO.
JC662009 (1)

**MARINE & ENERGY PRACTICE**

PAGE 41 OF 82

4.  (a)  The insurance against the risks enumerated in Clause 1, except the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged referred to in (b) below, shall not attach to the interest hereby insured or to any part thereof

   (i)  Prior to being on board an overseas Vessel (For the purpose of this Clause 4 an overseas Vessel shall be deemed to mean a Vessel carrying the interest from one port or place to another where such voyage involves a sea passage by that Vessel).

   (ii)  After being discharged overside from an overseas Vessel at the intended port or place of discharge,

     or

     after the expiry of 15 days from midnight of the day of arrival of the overseas Vessel at the intended port or place of discharge, whichever shall first occur.

   (iii)  After expiry of 15 days from midnight of the day of arrival of the overseas Vessel at an intermediate port or place to discharge the interest for on carriage from that or any other port or place by another overseas Vessel, but shall reattach as the interest is loaded on the on-carrying overseas Vessel. During the said period of 15 days the insurance remains in force whether the interest is awaiting transit or in transit between the overseas Vessels.

   (iv)  For the purposes of this Clause 4 arrival at the intended port or place of discharge shall be deemed to mean that time when the overseas Vessel first berths, anchors, moors or is secured in an area subject to regulation by the authorities of such port or place.

   (b)  The Insurance against the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged, attaches as the interest hereby insured is first loaded on a lighter, craft or vessel after leaving the warehouse at point of shipment in transit for the destination declared hereunder, and ceases to attach as the interest is finally landed from the vessel, craft or lighter prior to delivery to warehouse at such destination.

   (c)  If the contract of affreightment is terminated at a port or place other than the destination named therein such port or place shall be deemed the intended port or place of discharge for the purpose of this Clause 4.

   (d)  Shipments by mail, if covered by this Policy, are insured continuously from the time of leaving the sender's premises until delivered to the place of address.

> 1221
>
> Contract Leader

U0000066

**MARSH LTD**                                    **PAGE 42 OF 82**

CONTRACT NO.
JC662009 (1)                        **MARINE & ENERGY PRACTICE**

    (e)   Shipments by air (other then by air mail), if covered by this Policy are insured subject to the same terms and conditions as shipments by overseas Vessel.

    (f)   It is a condition of this insurance that the Assured shall act with reasonable dispatch in all circumstances within their control.

    (g)   If anything contained in this Policy shall be inconsistent with this Clause 4 it shall to the extent of such inconsistency be null and void.

5.    This insurance shall not be vitiated by deviation, overcarriage, change of voyage, or by any error or unintentional omission in the description of interest, vessel or voyage, provided the same be communicated to the Assurer as soon as known to the Assured and an additional premium paid if required.

6.    And in case of any loss or misfortune, it shall be lawful and necessary to and for the Assured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said goods, and merchandises, or any part thereof, without prejudice to this insurance; nor shall the acts of the Assured or Assurers, in recovering, saving and preserving the property Insured, in case of disaster, be considered a waiver or an acceptance of an abandonment; and to the charges whereof, the said Assurers will contribute according to the rate and quantity of the sum hereby insured.

7.    General Average and Salvage Charges payable according to United States laws and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

8.    It Is agreed that the reports of shipments made under the Policy against marine risks mentioned above shall be deemed to be reports under this Policy also, and the Assured agrees to pay premiums on all shipments insured under this Policy at the war risk rates of the Assurer as fixed from time to time.

9.    No claim shall be payable hereunder which arises from collision, contact with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather or fire unless caused directly (and independently of the nature of the voyage or service which the Vessel concerned or, in the case of a collision, any other Vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purpose of this paragraph "power" includes any authority maintaining naval, military or air forces in association with a power.

---

1221

Contract Leader

---

U0000067

**MARSH LTD**                                    PAGE 43 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

10.    No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value if the expenditure had been incurred.

11.    It is agreed that this Policy is a separate and wholly Independent contract and is not subject to any terms or conditions of the Policy against marine risks above mentioned (whether physically attached thereto or not) except as such terms or conditions shall have been expressly incorporated herein by reference.

12.    This Insurance may be cancelled by either party upon forty-eight hours written or telegraphic notice to the other party, but such cancellation shall not affect any shipment on which this insurance has attached under the terms of Clause 4 hereof prior to the effective date of such notice. Shipments on which this insurance has not so attached but for which, prior to the effective date of such notice, bills of lading have been issued and (in the case of exports) Certificates or special policies have been issued and negotiated, shall be covered from the time of loading on the overseas Vessel, as provided in Clause 4, at the rates of the Assurer, provided that, prior to said effective date, such shipments were at the risk of the Assured and were covered under the said Policy against marine risks.

In the event of loss which may give rise to a claim under this Policy, prompt notice shall be given to this Company.

**Dated:** May 1, 2008

**All Other Terms and Conditions Remaining Unchanged.**

**Attached To and Made a Part of Policy No.** SM4-1368

**Issued to:** Astra Oil Company, LLC,

**SOUTHERN MARINE & AVIATION**

| **1221** |
| --- |
| Contract Leader |

U0000068

**MARSH LTD**                                                    PAGE 44 OF 82

CONTRACT NO.
JC662009 (1)                     **MARINE & ENERGY PRACTICE**

## SPECIAL CONDITIONS

1. **INCREASED VALUE INSURANCE:**

   Additional Insurance and/or Increased Value Insurance and/or Profits Insurance on shipments purchased by the Insured on C.I.F. or similar terms whereby the Insured is not required to provide ocean marine insurance are covered hereunder, subject to the terms and conditions of this Policy, as per the following conditions:

   (a) To pay the same percentage of loss on additional insurance and/or increased value and/or profits insured hereunder as the Company would pay on cargo insured subject to the terms and conditions of this Policy but in the event of the goods on which the additional insurance and/or increased value and/or profits are insured hereunder being short-delivered or sold unidentifiable at the seaport of destination in consequence of perils insured against to pay a total loss on the additional insurance and/or increased value and/or profits on the part short-delivered or sold unidentifiable.

   (b) In the event of partial loss, the Company shall not be liable for a greater percentage of the amount insured than would be payable on the cargo itself if insured by this Company. This insurance is to be free of claim for General Average and/or Salvage and/or Special Charges except on the Excess of Contributory Value over the original amounts insured and only if uncollectible under the original insurance.

   (c) The valuation for this additional insurance to be the difference between the amount of the seller's insurance and the valuation as provided in Clause 4 of the Policy.

   (d) Regarding the additional insurance provided under this clause, the Policy is proof of interest. Full interest admitted, without benefit of salvage.

   (e) Premium for this extension of coverage to be calculated on the amount of Additional Insurance and/or Increased Value and/or Profits Insurance subject to the applicable policy rates at the time of shipment.

2. **ISSUANCE OF CERTIFICATES and/or SPECIAL POLICIES:**

   Authority is hereby given to the Insured and International Energy Insurance Brokers, Inc. to issue the Company's Certificates or special cargo policies on any and all risks applying under this Policy, subject to the terms and conditions of this Policy. Certificates or special cargo policies are not valid unless signed by an authorized representative of the Insured or International Energy Insurance Brokers, Inc.

| 1221 |
|------|
| Contract Leader |

U0000069

**MARSH LTD**                                                                      PAGE 45 OF 82

CONTRACT NO.
JC662009 (1)                          **MARINE & ENERGY PRACTICE**

3.   **SLOW STEAMING:**

Subject to an additional premium applicable per day excess of a 60 day allowance for normal voyage completion, and notwithstanding anything to the contrary contained in this Policy (other than the Delay Warranty which shall remain paramount), this insurance shall not be prejudiced by the maritime element of the venture insured not being prosecuted throughout its course with reasonable dispatch.

4.   **CLAIMS PROCEDURE:**

All losses to be adjusted by MMK International Marine Services, Inc., Houston, Texas.

5.   **SUBROGATION:**

Recovery efforts against carrier, obtaining of letters of undertaking or guarantees will be coordinated through MMK International Marine Services, Inc., Houston, Texas.

6.   (A)   **CONTINGENT INSURANCE:**

This Policy is extended to cover the interest of the Insured only, as a vendor in a credit transaction on all shipments made by the Insured on terms under which the Insured is not obliged to furnish marine insurance excluding, however, all shipments made under irrevocable letters of credit.

In consideration of the declarations of all such shipments and the payment of premium thereon, this Company will guarantee to the Insured the collection of losses within the terms and conditions of this Policy in connection with shipments for which the Insured has not been paid by the consignee. This Company will advance to the Insured the amount of the loss as a loan without interest with the Company accepting the debt due the Insured on an assignment basis. Such advance shall be repayable upon remittance of the purchase price by the consignee or to the extent of any recovery received by the Insured from insurance effected by the consignee or otherwise.

It is agreed that such shipments shall be insured subject to all terms, conditions, warranties, and limits of this policy and the Insured must prove his loss under the Policy.

Goods and/or merchandise insured hereunder shall be valued at amount of invoice plus prepaid and/or advanced and/or guaranteed freight, if any, not included in the invoice, subject to the limit of this Policy.

Notwithstanding the valuation expressed in the above paragraph it is agreed that in the event a vessel arrives in general average such shipments shall be valued at not less than the contributory value for general average purposes only, subject to the limit of this Policy.

| 1221 |
| --- |
| Contract Leader |

U0000070

**MARSH LTD**                    PAGE 46 OF 82

CONTRACT NO.
JC662009 (1)           **MARINE & ENERGY PRACTICE**

The Insured agrees not to divulge the existence of this insurance and to use all reasonable means to collect the full amount due from the consignee and in the event of ultimately being unable to collect, the Insured agrees to subrogate to this Company any rights he may have against the consignee, the consignees insurance and/or the carrier.

**(B)**  **DIFFERENCE IN CONDITIONS (D.I.C.):**

With respect to shipments purchased by the Assured on C.I.F. or similar terms, whereby ocean marine insurance is arranged by the seller and/or others, this Policy is extended to cover the difference in conditions between such other insurance and the conditions of insurance for which the merchandise would otherwise have been insured hereunder.

All shipments covered hereunder shall be valued and reported at the amount of the seller's insurance, subject to the limit of this Policy.

The Insured agrees to report all shipments on non-negotiable forms, on which insurance as set forth in (A) and (B) herein is desired or required and prior to commencement of loading operations, which shall bear the notation "Contingent/D.I.C. Coverage" and pay premium thereon at 50% of the rates set forth in the Rate Addendum, provided insurance with other insurers is on the identical terms herein; if otherwise, then the rate will be set by the Company.

**7.**  **GUARANTEE OF COLLECTIBILITY:**

In consideration of additional premium as agreed, it is understood and agreed that all shipments purchased by the Insured on C.I.F. terms or similar terms under which the seller is required to furnish insurance coverage (but excluding shipments brought from subsidiaries, affiliates and offices specifically excluded from this policy and which are insured by such subsidiaries, affiliates and offices under their own Open Policies), this Company guarantees collection of any claim recoverable under the terms and conditions of the seller's insurance but in no event will any claim be recoverable under this endorsement not recoverable under the terms and conditions provided in this Policy for the property involved.

All shipments insured hereunder to be valued and reported at the amount of the seller's insurance.

It is further understood and agreed that in no event shall this insurance inure to the benefit of the seller or his insurer, and the Insured agrees to make all reasonable efforts to collect the full amount of the loss from the seller and/or his insurer, but in event of the Insured being unsuccessful in making a recovery, this Company will advance the amount of the loss uncollected, as a loan, and shall thereupon be subrogated to all the rights of the Insured against the seller and/or his insurer.

| 1221 |
| --- |
| Contract Leader |

U0000071

**MARSH LTD**                                        PAGE 47 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

8.  **SELLER'S INTEREST:**

It is hereby understood and agreed that with respect to the subject shipments made by the Assured on terms whereby the Assured is not obligated to furnish ocean marine insurance, these Assurers will guarantee to the Assured the collection of losses which otherwise would have come within the terms of this policy. Such shipments shall be valued as provided for elsewhere herein.

This is an agreement between the company and the Assured and it is not to inure to the benefit of any third party. No certificates or special policies of insurance shall be issued in connection with this coverage.

This insurance nevertheless attaches from the time the goods and/or merchandise are placed in due course of transit from the original point of shipment as provided in the Warehouse to Warehouse Clause.

The buyer's insurance, if any, is to be deemed prior insurance, but the Assurers nevertheless agree in the event of loss covered by this policy to advance the amount of such loss as a loan without interest pending recovery, if any, from the buyer and/or buyer's insurance.

It is a warranty under this policy that the Assured agrees not to divulge the existence of this insurance. The Assured hereby agrees to pursue all rights against the buyer and/or the buyer's Assurers in accordance with the terms of the purchase as though this policy did not exist. The Assured further agrees to remit all such recoveries to the Assurers and/or subrogate to this company any and all rights the Assured may have against the buyer, the buyer's insurance and/or the carrier.

9.  **PIPELINE TRANSIT AND LAND TRANSIT VIA COMMON CARRIER:**

It is understood and agreed that this Policy is extended to cover crude oil and/or petroleum products in bulk whilst in transit via pipeline(s) and/or via common carriers (rail or motor truck).  This insurance covers against all risks of direct physical loss or damage from any external cause but specifically excluding unexplained shortage and/or unexplained loss in weight (or volume).  Notwithstanding anything contained herein to the contrary, it is understood and agreed that claims for shortage and/or leakage and/or loss in weight (or volume) shall not be recoverable hereunder unless proved by the Insured to be due to a fortuitous cause, accident or event.

| 1221 |
|------|
| Contract Leader |

U0000072

## MARSH LTD

**PAGE 48 OF 82**

CONTRACT NO.
JC662009 (1)

**MARINE & ENERGY PRACTICE**

The Insured agrees to report monthly values at risk in transit via pipeline and/or motor truck and/or rail common carrier and to furnish the Company on or before the 30th day of each month a report such report to be a complete record of all values at risk in transit computed thereon at a policy rate of:

0.0045%    as respects shipments via pipeline with Deductible Option "A" of USD5,000 as mentioned in Deductible Average Clause below.

0.0033%    as respects shipments via pipeline with Deductible Option "B" of USD100,000 as mentioned in Deductible Average Clause below.

0.067%    as respects motor truck and/or rail common carrier.

**Amount of Insurance Hereunder:**

As respects transit via pipeline:

USD20,000,000.00 any one loss, accident or occurrence.

As respects transit via motor truck and/or rail common carrier:

USD1,000,000.00 any one conveyance.

**Deductible Average:**

Each claim for loss or damage shall be adjusted separately and from the amount of each adjusted claim the following sum or sums shall be deducted:

As respects pipelines:

Deductible Option "A"          USD5,000.00
Deductible Option "B"          USD100,000.00

**IF DEDUCTIBLE OPTION A IS REQUIRED THIS MUST BE DECLARED PRIOR TO ATTACHMENT OF RISK OTHERWISE OPTION 'B' SHALL APPLY.**

As respects motor truck and/or rail common carrier:

USD1,000.00

**Dated:** May 1, 2008

**Attaching to and Forming Part of Policy No.** SM4-1368

**Issued to:** Astra Oil Company, LLC,

### SOUTHERN MARINE & AVIATION

**BY:**_____

1221

Contract Leader

U0000073

| | **MARSH LTD** | **PAGE 49 OF 82** |
|---|---|---|

**CONTRACT NO.**
JC662009 (1)                **MARINE & ENERGY PRACTICE**

### STORAGE ENDORSEMENT

In consideration of premium to be reported at rates as set forth hereunder, it is understood and agreed that this Policy is extended to cover property of the Insured (or for whom they have instructions to insure) in bulk or break-bulk form while in storage worldwide against all risks of direct physical loss or damage from any external cause but specifically excluding claims for unexplained shortage and/or shortage disclosed upon taking inventory and/or unexplained loss in weight (or volume). Notwithstanding anything contained herein to the contrary, it is agreed that claims for shortage and/or loss in weight (or volume) shall not be recoverable hereunder unless proved by the Insured to be due to a fortuitous cause, accident or event.

The Insured shall keep an accurate record of all values at risk in storage in respect of which insurance is provided hereunder (which record shall be open to examination by representatives of the Company at any time during business hours) and shall furnish the Company on or before the 30th day of each month a report, such report to be a complete record of all values at risk as of the last day of the preceding month, and shall pay premiums computed thereon at a policy rate of .01% on values so reported.

Amount of Insurance Hereunder:

a.              As respects property not located in California:

                USD200,000,000 any one location;

b.              As respects property located in California:

                USD200,000,000.00 as respects goods in storage at any one location;

                USD200,000,000.00 as respects loss or damage caused by earthquake in the policy aggregate.

Deductible Average Clause:

Each claim for loss or damage shall be adjusted separately and from the amount of each adjusted claim shall be deducted:

a.              As respects bulk liquids:  .5% of the insured value in each tank;

b.              As respects all other property: To Be Agreed

| 1221 |
|---|
| Contract Leader |

**MARSH LTD**                    PAGE 50 OF 82

CONTRACT NO.
JC662009 (1)          **MARINE & ENERGY PRACTICE**

Notwithstanding the foregoing, claims recoverable in respect of actual or constructive total loss and/or Sue and Labor Charges shall be payable in full irrespective of percentage.

Notwithstanding anything to the contrary contained herein, there shall be no coverage under this endorsement for:

(i)     Any of the risks for which coverage is otherwise provided by the War Risks Endorsement, if any, hereto;

(ii)    Losses occurring through or concerning truck rack sales;

(iii)   Losses occasioned due to the infidelity of or deliberate act against the goods or property intended to be covered under this policy by the Assured, other Named Assureds or Co-Assureds or their employees;

(iv)    Loss or damage due to processing, mixing, blending, refining or preparation;

(v)     Losses in volume that are not accompanied by a corresponding loss in weight;

(vi)    Loss or damage occasioned by inefficiencies of the refinery or any other losses inherent to the normal or abnormal operation of a refinery;

(vii)   Losses not reported or identified to underwriters within sixty (60) days of the commencement of their occurrence;

(viii)  Losses occurring systematically or over a period of time unless reported or identified to underwriters within sixty (60) days of the commencement of their occurrence.

| 1221 |
| --- |
| Contract Leader |

U0000075

**MARSH LTD**                                     PAGE 51 OF 82

**CONTRACT NO.**
JC662009 (1)                  **MARINE & ENERGY PRACTICE**

War, etc. Exclusion

Notwithstanding anything to the contrary contained herein, there shall be no coverage under this endorsement for any of the risks for which coverage is otherwise provided by the War Risks Endorsement, if any, hereto.

Dated:  May 1, 2009

Attaching to and Forming Part of  Policy No.  SM4 1368

Issued to:  Astra Oil Company, Inc.,

                    SOUTHERN MARINE & AVIATION UNDERWRITERS, INC.

        BY:_____

| 1221 |
|---|
| Contract Leader |

U0000076

**MARSH LTD**                    PAGE 52 OF 82

**CONTRACT NO.**
JC662009 (1)          **MARINE & ENERGY PRACTICE**

## PROFIT COMMISSION CLAUSE

Subject to 100% renewal with this Insurer of coverage hereunder, the Insurer shall allow to the Insured, in respect of each annual period of this Policy, a return premium of 50% of the amount, if any, by which:

(a)    50% of the gross premium paid hereunder, after deduction of all return premiums,

exceeds

(b)    the sum of:

    (i)    the actual amount of losses incurred, including legal and adjusting expenses, in excess of the policy deductible, less any refunds and recoveries, in salvage or otherwise, realized on those losses, plus adequate reserves for claims, and expenses thereon, reported to the Company but not yet paid, plus

    (ii)    any deficit resulting from an excess of (b) (i) over (a) from prior annual periods of this Policy or any prior policies issued by this Insurer to the Insured of which this Policy or said prior policies are renewals provided that such prior policies contain a Profit Commission Clause similar in effect to this clause, but said deficit shall be carried forward for not more than three (3) years after the end of the year in which the deficit occurred.

The above return premium(s) shall be allowed on or about three months after the expiry date of the annual period to which each such return premium applies, and shall be provisional and subject to further adjustment.

Further provisional adjustment(s) of any such return premium(s) shall be made as necessary at each anniversary of the first allowance thereof, and a final adjustment of such return premium(s) shall be made as necessary when all losses applicable to the annual period to which such return premium applies have been paid and closed.

For the purposes of this clause the premium and loss figures as recorded in the Company's books shall be accepted by both parties.

**In the event of cancellation or non-renewal of this policy, this endorsement shall not apply to profits earned for the past policy year or any part thereof.**

**Dated:** May 1, 2008
**Attaching to and Forming Part of Policy No.** SM4-1368
**Issued to:** Astra Oil Company, LLC,

                            **SOUTHERN MARINE & AVIATION**

| 1221 |
| :---: |
| Contract Leader |

U0000077

**MARSH LTD**                    PAGE 53 OF 82

CONTRACT NO.
JC662009 (1)                **MARINE & ENERGY PRACTICE**

### Termination of Transit Clause (Terrorism)

This clause shall be paramount and shall override anything contained in this policy or any of its endorsements inconsistent therewith.

1.   Notwithstanding any provision to the contrary contained in this policy, its endorsements, or the  clauses referred to therein, it is understood and agreed that in so far as this policy covers loss of or damage to the subject matter insured directly caused by the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional, such cover is conditional upon the subject matter insured being in the ordinary course of transit and, in the any event, shall terminate:

either

1.1   As per the Warehouse to Warehouse Clause contained within the policy,

or

1.2   on delivery to the Consignee's or other final warehouse or place of storage at the destination named herein,

1.3   on delivery to any warehouse or place of storage, whether prior to or at the destination named herein, which the Assured elect to use either for storage other than the ordinary course of transit or for allocation or distribution,

or

1.4   in respect of marine transits, on the expiry of 60 days after completion of discharge overside of the goods hereby insured from the overseas vessel at the port of discharge,

1.5   in respect of air transits, on the expiry of 30 days after unloading the subject matter insured from the aircraft at the final place of discharge,

whichever shall first occur.

2.   If this policy, its endorsements, or the clauses referred to therein specifically provide cover for inland or other further transits following on from storage, or termination as provided for above, cover will re-attach, and continues during the ordinary course of that transit terminating again in accordance with clause 1 above.

| 1221 |
|------|
| Contract Leader |

U0000078

**MARSH LTD**                                    PAGE 54 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

3.  This clause is subject to English law and customs, except in the United States and its possessions where the law and customs of the Unites States will prevail

**All other terms and conditions remain unchanged**

**Dated:**  May 1, 2008

**Attaching to and Forming Part of Policy No.**  SM4-1368

**Issued to:**  Astra Oil Company, LLC,

                              **SOUTHERN MARINE & AVIATION**

| 1221 |
|---|
| Contract Leader |

U0000079

**MARSH LTD**

**MARINE & ENERGY PRACTICE**

### S. R. & C. C. Endorsement (Form No. 12)

THIS INSURANCE ALSO COVERS:

Physical loss of or damage to property insured directly caused by strikers, locked-out workmen, or persons taking part in labor disturbances or riots or civil commotions;

Physical loss of or damage to the property insured directly caused by vandalism, sabotage or malicious acts; and,

Physical loss of or damage to the property insured directly caused by the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional; PROVIDED that any claim to be recoverable under this subsection (3) be not excluded by the Free of Capture & Seizure Warranty, Extended Radioactive Contamination Exclusion Clause (Extended RACE Clause) or Chemical, Biological, Bio-Chemical and Electromagnetic Exclusion Clause (CBE Clause) in the Policy to which this endorsement is attached. Notwithstanding the foregoing, coverage under this subsection (3) is conditional upon the property insured being in the ordinary course of transit and, in any event, **shall terminate**:

*(a)* As per the Warehouse to Warehouse Clause, Marine Extension Clause, 60 Day South American Clause and any other clauses relating to duration of transit contained in or endorsed onto the Policy; *or,*

*(b)* on delivery to the consignee's or other final warehouse or place of storage at the destination named herein; *or,*

*(c)* on delivery to any warehouse or place of storage, whether prior to or at the destination named herein, which the Assured elects to use either for storage other than in the ordinary course of transit or for allocation or distribution; *or,*

*(d)* in respect of marine transits, on the expiry of 60 days after completion of discharge overside of the property insured from the vessel at the port of discharge; *or,*

*(e)* in respect of air transits, on the expiry of 30 days after unloading the property insured from the aircraft at the place of discharge;

**whichever shall first occur.**

While the property insured is at risk under the terms and conditions of this insurance within the United States of America, the Commonwealth of Puerto Rico, the U.S. Virgin Islands and Canada, this insurance is extended to cover physical loss of or damage to the property insured directly caused by acts committed by an agent of any government, party or faction engaged in war, hostilities or other warlike operations, provided such agent is acting secretly and not in connection with any operation of military or naval armed forces in the country where the described property is situated.

Nothing in this endorsement shall be construed to cover any loss, damage or expense directly or indirectly arising from, contributed to or caused by any of the following, whether due to a peril insured against or otherwise:

(a)   change in temperature or humidity;

(b)   the absence, shortage, or withholding of power, fuel or labor of any description whatsoever during any strike, lockout, labor disturbance, riot or civil commotion;

(c)   loss of market or loss, damage or deterioration arising from delay;

(d)   hostilities, warlike operations, civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, except to the limited extent that the acts of certain agents acting secretly have been expressly covered above; or

| 1221 |
| --- |
| Contract Leader |

**MARSH LTD**                                    **PAGE 56 OF 82**

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

---

(e)   nuclear reaction, radiation or radioactive contamination, as per Extended RACE Clause;

(f)   chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material, as per CBE Clause.

The Assured agrees to report all shipments attaching under this cover and to pay premiums therefore at the rates established by the Assurer from time to time.

This endorsement may be cancelled by either party upon forty-eight hours written, telegraphic, telefaxed, or electronic notice to the other party, but such cancellation shall not affect any risks which have already attached hereunder.

All other terms and conditions remain unchanged.

| 1221 |
| --- |
| Contract Leader |

U0000081

**MARSH LTD**                                    PAGE 57 OF 82

CONTRACT NO.
JC662009 (1)            **MARINE & ENERGY PRACTICE**

**MINIMUM EARNED PREMIUM**
**MINIMUM AND DEPOSIT PREMIUM**

The following terms are often misunderstood, particularly among Insureds or producers not accustomed to dealing with surplus lines insurance companies. It is important that definitions are understood.

MINIMUM AND DEPOSIT

This is the amount of premium due at inception. Although the policy is subject to adjustment based on a rate per exposure unit, under no circumstances will the annual earned premium be less than the minimum premium. Therefore, the policy may generate an additional premium on audit, but not a return.

If such policy is cancelled mid-term, the earned premium is the GREATER of the annual minimum times the short rate or pro-rata factor, or the actual earned as determined by audit, subject to a short rate penalty if applicable.

MINIMUM EARNED PREMIUM

A minimum earned premium endorsement can be attached to either a flat charge policy or an adjustable policy. In either case, this amount is the LEAST that will be retained by the insurance company once the policy goes into effect. The amount retained would be the GREATER of the actual earned premium whether calculated on a pro-rate or short rate basis, or the minimum earned premium.

FLAT CANCELLATIONS

Surplus lines insurance companies normally do not allow flat cancellations. Once the policy is in effect, some premium will be earned.

If you need further explanation, please do not hesitate to contact us.

01/2002-Premium Definition

1221

Contract Leader

U0000082

**MARSH LTD**  PAGE 58 OF 82

CONTRACT NO.
JC662009 (1)  **MARINE & ENERGY PRACTICE**

## BULK OIL CLAUSES

1.  The Assured are not to be prejudiced by the presence of the negligence clause and/or latent defect clause in the bills of lading and/or charter party. The seaworthiness of the vessel and/or craft as between the Assured and Assurers is hereby admitted, and the Assurers agree that in the event of unseaworthiness or a wrongful act or misconduct of shipowner, charterer, their agents or servants, shall directly or indirectly, cause loss or damage to the cargo insured by sinking, stranding, fire, explosion, contact with seawater, or by any other cause of the nature of any of the risks assumed in the policy, the Assurers will (subject to the terms of average and other conditions of the policy) pay to an innocent Assured the resulting loss. With leave to sail with or without pilots, and tow and assist vessels or craft in all situations and to be towed.

2.  Provided prompt notice be given the Assurers when such facts are known to the Assured and additional premium be paid if required, it is understood and agreed that in case of short shipment in whole or in part by the vessel reported for insurance hereunder, or if the goods be transhipped by another vessel or vessels, or be carried beyond or discharged short of destination, or in the event of deviation or change of voyage, or any interruption or other variation of the voyage or risk beyond the control of the Assured, this insurance shall nevertheless cover the goods until arrival at the final destination named in the policy or certificate of insurance or until the subject-matter insured is no longer at the risk of the Assured, whichever may first occur. No additional risks (whether of delay or of any other description) are insured under this clause, which is intended merely to continue the insurance in force against the same risks named elsewhere in this policy or certificate and if the risks of War, Strikes, Riots or Civil Commotions, or any of these risks, are insured against, the insurance against such risks shall not be extended by this clause to cover contrary to any express provision of such insurance.

3.  Including all risks of transhipment if required and of craft to and from the vessel, each lighter, craft or conveyance to be considered as if separately insured; also to cover any special or supplementary lighterage at additional premium if required. The Assured is not to be prejudiced by any agreement exempting lightermen from liability.

4.  General Average, Salvage and Special Charges, as per foreign custom, payable according to foreign statement, and/or per York-Antwerp Rules and/or in accordance with the contract of affreightment, if and as required; or, failing any provision in or there be no contract of affreightment, payable in accordance with the Laws and Usages of the Port of New York; and it is agreed that in the event of salvage, towage or other assistance being rendered to the vessel and/or interest hereby insured by any vessel belonging in part or in whole to the same owner or under the same management, the value of such services (without regard to the common ownership or management) shall be ascertained by arbitration and the amount so awarded, insofar as applicable to the interest hereby insured, shall constitute a charge under this policy.

| 1221 |
| --- |
| Contract Leader |

U0000083

**MARSH LTD**                                    **PAGE 59 OF 82**

**CONTRACT NO.**
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

5.    In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever whether due to negligence or not, for which or for the consequences of which the Shipowner is not responsible by statute or contract or otherwise, these Assurers shall nevertheless pay Salvage and/or Special Charges incurred in respect of the interests hereby insured and shall contribute with the Shipowner in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred.

6.    It is agreed that no right of subrogation except through General Average shall lie against any vessel or craft, or in respect to any pipe lines, on which cargo hereby insured is being carried or in respect of which freight insured hereunder is at risk, belonging in part or in whole to a subsidiary and/or affiliated company.

7.    Against all risks whatsoever (excepting as hereinafter provided) excluding the risks excepted by the F. C. & S. and S. R. & C. C. warranties incorporated herein, from time of leaving tanks at port of shipment and whilst in transit and/or awaiting transit and until safely delivered in tanks at destination, but notwithstanding anything herein to the contrary, the Assurers are not liable for shortage and/or leakage and/or contamination (except as elsewhere in this policy provided) unless caused by or arising out of the vessel or craft being stranded, sunk, burnt, in collision or in contact with any substance or thing (ice included) other than water, fire, explosion (howsoever and  wheresoever occurring) or there be a forced discharge of cargo; provided, however, that these Assurers are liable, for contamination resulting from stress of weather.

      It is agreed that notwithstanding anything herein to the contrary, this insurance is to pay the insured value of any oil lost from connecting pipe lines, flexible or otherwise, in loading, transhipment or discharge.

      Claims are to be paid irrespective of percentage, but subject to deduction for normal shortage.

8.    This insurance is also specially to cover any loss of and/or damage to the interest insured hereunder, including shortage and/or leakage and/or contamination, through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation and/or management of the vessel by the Master, Mariners, Mates, Engineers or Pilots; provided, however, that this clause shall not be construed as covering loss arising out of delay, deterioration or loss of market, unless otherwise provided elsewhere in this policy.

9.    These Assurers also agree that any action or proceeding against them for the recovery of any claim under or by virtue of this insurance shall not be barred if commenced within the time prescribed therefor in the Statutes of the State of New York.

10.   The warranty that vessel be loaded under inspection of surveyors appointed by the underwriters is hereby waived.

| 1221 |
| Contract Leader |

U0000084

**MARSH LTD**                    PAGE 60 OF 82

CONTRACT NO.
JC662009 (1)                **MARINE & ENERGY PRACTICE**

11.   In the event that this Policy is extended to cover property prior to the attachment or subsequent to the expiration of the cover provided by the attached Marine Extension Clauses, such extension shall always be subject to the following exclusion unless specifically otherwise stated in writing signed by this company in the extension endorsement or otherwise:

This Company shall not be liable for any claim for loss, damage or expense arising directly or indirectly from any nuclear incident, reaction, radiation or any radio-active contamination, all whether controlled, or uncontrolled, occurring while said property is within the United States or any territory of the United States, the Canal Zone or Puerto Rico, or arising from a source therein, and whether the loss, damage or expense be proximately or remotely caused thereby, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy; however, subject to the foregoing and all provisions of this policy, if this Policy insures against the peril of fire, then direct loss by fire resulting from nuclear incident, nuclear reaction, or nuclear radiation or radioactive contamination is insured against by this Policy.

12.   Notwithstanding anything herein contained to the contrary, this insurance is warranted free from capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise; also warranted free whether in time of peace or war, from all loss, damage or expense caused by any weapon of war employing atomic, or nuclear fission and/or fusion or other reaction or radioactive force or matter or by any mine or torpedo, also warranted free from all consequences of hostilities or warlike operations (whether there be a declaration of war or not), but this warranty shall not exclude collision or contact with aircraft, rockets or similar missiles or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purposes of this warranty 'power' includes any authority maintaining naval, military or air forces in association with a power.

Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy.

13.   Warranted free of loss or damage caused by or resulting from strikes, lockouts, labour disturbances, riots, civil commotions or the acts of any person or persons taking part in any such occurrence or disorder.

14.   If this policy is issued for a period of time, it is agreed that should the vessel at the expiration hereof be at sea, or in distress, or at a port of refuge or of call, the interest hereby insured shall, provided previous notice be given to the insurers, be held covered at a pro rata premium until arrival at port of destination.

| 1221 |
|---|
| Contract Leader |

U0000085

**MARSH LTD**                                      PAGE 61 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

15. Where goods are shipped under a bill of lading containing the so-called "Both to Blame Collision" Clause these Assurers agree, as to all losses covered by this insurance, to indemnify the Assured for any amount (up to the amount insured) which the Assured may be legally bound to pay to the shipowners under such clause.  In the event that such liability is asserted the Assured agree to notify the Assurers who shall have the right at their own cost and expense, to defend the Assured against such claim.

SP-13C
CLA219

| 1221 |
| Contract Leader |

U0000086

**MARSH LTD**                                    **PAGE 62 OF 82**

CONTRACT NO.
JC662009 (1)                **MARINE & ENERGY PRACTICE**

DEFINITION ENDORSEMENT

It is agreed the following terms are interchangeable in this policy:

a)   Certificate, Cover Note and Policy
b)   Underwriters and Company
c)   Assured and Insured

Insurers:                     Premium Proportion:

Underwriters at Lloyd's
London and/or Insurance
Companies
Certificate No.:  41764_____                        $_____Nil_____

THE EFFECTIVE DATE OF THIS ENDORSEMENT IS  May 1, 2008

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

THIS ENDORSEMENT IS ATTACHED TO AND FORMING A PART OF SOUTHERN MARINE & AVIATION POLICY NO. SM4-1368

ISSUED TO:  Astra Oil Company, LLC,

DATE OF ISSUE:  May 1, 2008

SOUTHERN MARINE & AVIATION

BY:_____

| 1221 |
| --- |
| Contract Leader |

U0000087

**MARSH LTD**                                          PAGE 63 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

---

ENDORSEMENT

**Terrorism Risk Insurance Act of 2002**
**Coverage Election Endorsement**

☒ **Rejection of Buyback**: Your Policy may contain a Termination of Transit Clause (Terrorism), "Strikes, Riots & Civil Commotions (March 1, 2002); S.R. & C.C. Endorsement (Form No. 10) and other clauses that would limit coverage for acts of terrorism.   Under the terms of the Terrorism Risk Insurance Act of 2002, the Company is required to offer a limited buyback for certified "acts of terrorism" as defined under the act.  If this box is checked, this means that you have elected not to purchase the following limited buyback.  Please contact your producer should you wish to have more details regarding this coverage.

☐ **Limited Terrorism Buyback**: In consideration of an additional premium of _____ payable at inception, it is hereby agreed that any endorsement attached to this policy that excludes "acts of terrorism" as defined by Section 102(1) of the Terrorism Risk Insurance Act of 2002 is hereby nullified with respect to certified "acts of terrorism."

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States –

    (i)     to be an act of terrorism;
    (ii)    to be a violent act or an act that is dangerous to human life, property or infrastructure;
    (iii)   to  have resulted in damage within the United States, or outside of the United States in the case of an air carrier or vessel, or the premises of a United States mission; and
    (iv)   to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under the Act, no act shall be certified by the Secretary to be an act of terrorism if the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers compensation.

1221

Contract Leader

U0000088

81

## MARSH LTD

**PAGE 64 OF 82**

**CONTRACT NO.**
JC662009 (1)

**MARINE & ENERGY PRACTICE**

ENDORSEMENT NO. 2

You should know that coverage provided by this Policy for losses caused by certified acts of terrorism would be partially reimbursed by the United States under a formula established by federal law.  Under this formula, the United States would pay 90% of covered terrorism losses in excess of a statutorily established deductible that this Company would be first required to pay. The additional premium for this extension does not include any charges for that portion of any loss for which we might receive reimbursement by the federal government under the Act.

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED**

Insurers:                    Premium Proportion:

Underwriters at Lloyd's
London and/or Insurance
Companies
Certificate No.:  41764_____                          $_____Nil_____

THE EFFECTIVE DATE OF THIS ENDORSEMENT IS  May 1, 2008

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

THIS ENDORSEMENT IS ATTACHED TO AND FORMING A PART OF SOUTHERN MARINE & AVIATION POLICY NO.  SM4-1368

ISSUED TO:  Astra Oil Company, LLC,

DATE OF ISSUE:  May 1, 2008

SOUTHERN MARINE & AVIATION

BY: _____

| 1221 |
| --- |
| **Contract Leader** |

U0000089

**MARSH LTD**                                    PAGE 65 OF 82

CONTRACT NO.
JC662009 (1)              **MARINE & ENERGY PRACTICE**

PREMIUM: NIL

Effective May 1, 2008 and in consideration of the premium charged and to be charged at rates contained herein, it is understood and agreed that the following amendments are attached to and made a part of this policy of insurance:

1.  Shipments of liquefied natural gas (LNG) are held covered subjects to rates, terms and insuring conditions to be agreed based on underwriting information to be provided at time of shipment(s).

2.  The following is hereby deleted from item 6(a), 'Contingent Insurance', page 2 of form CAR-007 (8/92): Excluding, however, all shipments made under irrevocable letters of credit."

3.  Item 13, "Errors and Omissions/Deviation", page 6 of form CAR-OO1 (1/93) is amended to read as follows:

"This policy shall not be prejudiced by any unintentional error in the description of the interest, vessel or voyage, or if the subject matter of the insurance be shipped by any other vessel, if notice be given to underwriters as soon as practicable after said facts become known to the Assured."

4   The following clauses are hereby added to and make a part of this insurance, subject always to the delay of warranty, item 36 c, which shall remain paramount:

   (i)   QUARANTINE:

   It is agreed upon that insurers shall remain liable, without interruption of risks, in accordance with the written conditions of this policy, for all and any sea, river or land risk, during quarantine or measures originating therefrom or resulting from quarantine originating or not from clauses of charter parties or bills of lading.

   (ii)   SOJOURN RISKS:

   Whatever relates to attachment and termination of risks in item 19, "Warehouse to Warehouse/Attachment Clause", is generally applicable.

   Failing any stipulation to the contrary in the pages of the tariff of the present policy, the terms of the clause in question will govern the attachment and termination of asks.

| 1221 |
| --- |
| Contract Leader |

U0000090

**MARSH LTD**                                        PAGE 66 OF 82

CONTRACT NO.
JC662009 (1)                     **MARINE & ENERGY PRACTICE**

ENDORSEMENT NO. 3

However, it remains well understood that regarding all sojourn risks, whether or not they result from the doings of the Assured or his principals, whereof the duration should exceed thirty days per separate sojourn risk, the subscribing insurers may claim an additional premium, the rate to be agreed.

Upon case by case, this additional premium shall be applicable per indivisible commenced period of 15 days, this clause is valid for sojourns before shipment of the merchandise on board the sea-going vessel and after unloading.

The Assured undertakes in good faith to inform International Energy Insurance Brokers, Inc. of any sojourn that separately would exceed the said period of thirty days as soon as it is known to him.

5.  Item 9, "Average Terms and Conditions", form CAR-000 (1/93), is amended to read as follows:

    Subject to the terms and conditions of the Bulk Oil Clauses (SR-13C) extended to include shortage and/or leakage and/or loss in weight (or volume) and/or contamination howsoever arising, whether due to inherent vice or not."

6.  It is understood and agreed that the following clauses replace and supersede any other clause or clauses previously issued herein and in conflict therewith:

    (i)  Unpaid Vendor Coverage:

        This policy is extended to cover the Assured's interest as an unpaid vendor on terms whereby the Assured is not obliged to furnish ocean marine insurance and for which the Assured has not received payment.

        This insurance is subject to the conditions of the present policy and continues until such time as the Assured receives payment for the goods but in no event beyond delivery to the consignee.

        In the event of loss or damage covered by this insurance, if the Assured is unable to collect payment for the merchandise in the regular course, the underwriters shall advance the amount of such loss pending collection from the buyer, and the Assured shall use all reasonable means to collect the full amount due from the buyer and reimburse the underwriters, the latter sharing the expenses of such collection in proportion to their interest.

        The Assured agrees to report all shipments and/or storages covered hereunder and takes care it is expressly stated in the sale's contract that the buyer is obliged to arrange a convenient insurance cover.

---

**1221**

Contract Leader

---

U0000091

**MARSH LTD**                    PAGE 67 OF 82

CONTRACT NO.
JC662009 (1)          **MARINE & ENERGY PRACTICE**

ENDORSEMENT NO. 3

This insurance, on payment of the balance of the full cover rates, shall attach hereto retrospective to the commencement of the transit if one or more of the following contingencies for any reason occur:

(a)     In the event of loss and/or damage where buyer has omitted to insure or insure inadequately or his underwriters refuse payment;

(b)     The title of the goods concerned is not transferred to the buyer for any reason whatsoever and reverts to the Assured;

(c)     The Assured exercises a lien on the goods or interrupts their transit or suspends the sale while the goods are in transit, when this is reasonable and legal to safeguard his interests;

> All rights and benefits which the Assured may possess against the buyer, the buyer's underwriters, the carriers, shipowner and/or other persons or parties shall be subrogated to the underwriters hereunder.
>
> Where Assured purchases interest (ashore or afloat) on terms (e.g. free on board) that do not provide cargo insurance, they may declare such shipments for full insurance hereunder at policy terms, conditions and rates; but where such shipments are then sold afloat (and before commencement of discharge operations) on terms of sale (which inter-alia provide for payment on other than "arrived" or "delivered" basis) identical or equivalent to those terms on which the interest was purchased by Assured, then underwriters agree, at the time, to lapse coverage or if required to amend coverage hereunder to contingent unpaid vendor's interest as above.

(ii)  SUBSTITUTION

This policy is extended to cover shipments of goods purchased by the Assured on "CIF" or similar terms under which insurance is provided by the seller and sold by the Assured on the same terms subject to the following conditions:

This insurance to attach from the time goods leave the warehouse and/or storage at the place named in the policy for the commencement of the transit subject to the terms of the Warehouse Clause elsewhere provided herein. These underwriters to pay all and every claim subject to policy terms and conditions and then to be vested with all Assured's right of recovery against primary insurance subscribed by the Assured's seller.

This insurance to be valued at the amount shown on the certificate of insurance issued by the Assured and premium to be paid at rates agreed herein.

| *1221* |
|---|
| Contract Leader |

U0000092

**MARSH LTD**                                    PAGE 68 OF 82

CONTRACT NO.
JC662009 (1)                **MARINE & ENERGY PRACTICE**

ENDORSEMENT NO. 3

COVER IS EXTENDED TO INCLUDE:

(a)                    Difference in deductibles;

(b)                    Difference in conditions;

(c)                    Increased insurance values are covered at full policy rates.

(iii)  GUARANTEE OF COLLECTIBILITY:

In respect of shipments of goods and merchandise purchased by the Assured on "CIF" or similar terms under which insurance is provided by the seller, the Assured has the option to cover under this policy the collectiblility of any claim recoverable under the insurance provided by the seller and which would also have been covered hereunder should it have been declared.

Such options is to be exercised by the Assured, giving written declaration to International Energy Insurance Brokers, Inc., prior to any known or reported loss or accident or vessel overdue, and of payment of premium at rates agreed herein.

This insurance shall be valued at the same amount as shown in the insurance provided by the seller or if in foreign currency at the equivalent in US dollars determined at bankers' sight rate of exchange current in New York on the date of declaration, at the option of the Assured to be exercised at the time of declaration.

In the event of loss or damage covered hereunder than those covered under "FPA" conditions these underwriters shall advance as a loan to the Assured the amount of any claim which would be recoverable under the terms of this policy in consideration which the Assured agrees to make every effort to collect promptly the full amount of such claims from the seller or his underwriters.

The repayment by the Assured of any such loan shall be required to the extent of the collection which the Assured may secure from the seller or his underwriters it being agreed the underwriters hereunder will pay all costs and expenses incurred with their consent by the Assured in the effort to secure such collections.

In the event of a claim for general average, salvage and special charges contribution and all claims covered under "FPA" conditions on shipments insured by the seller, the Assured will act as if he were not insured hereunder and the underwriters providing such coverage to face their liabilities.

Warranted no cancellation of this insurance by the Assured and no return of premium because of other insurance.

The benefit of this insurance cannot be transferred to any one else that the Assured expressly names in this policy.

| 1221 |
|---|
| Contract Leader |

U0000093

86

# MARSH LTD

**CONTRACT NO.**
JC662009 (1)

**MARINE & ENERGY PRACTICE**

PAGE 69 OF 82

---

## ENDORSEMENT NO. 3

Warranted that this insurance will remain secret and warranted no certificates or policies issued hereunder.

COVER IS EXTENDED TO INCLUDE:

(a)   Difference in deductibles;

(b)   Difference in conditions (excluding difference with Ingosstrakh certificates).

Difference in conditions coverage is held covered at an additional premium to be agreed case by case on receipt of Assured's sellers original policy or insurance certificate.

(iv) INCREASED VALUE COVER:

This policy is extended to cover increased values and/or profits insurance on shipments insured thereunder as cargo or purchased by the Assured "CIF" or on similar terms, subject to the following conditions:

Such insurance is covered subject to policy terms of average but free of general average and/or salvage and/or special charges except on the excess of contributory value over the original amount insured if uncollectible under the original policy on cargo. In the event of partial loss, these underwriters are to be liable for the same percentage of loss and/or damage as is payable under the original cargo policy as ascertained, otherwise as may be determined as customary, except in the event of a sale at auction at destination, then for the difference, if any, between the amount the insured hereunder and the amounts for which the original policy is liable plus the net proceeds of the auction, but in no event for more that the amount insured hereunder.

This insurance is also to pay as for a total loss on any portion of the goods non-delivered at or sold short of destination due to a peril insured against.

Increased value and/or profit insurance shall be valued at the amount declared prior to arrival of overseas vessel at final port of discharge and prior to known or reported loss or accident or vessel overdue.

It is agreed that on any such insurance full interest is admitted, the policy being deemed sufficient proof of interest. This insurance is without benefit of salvage.

(v)   Difference in conditions with Ingosstrakh certificates of insurance:
For difference in conditions between:

Ingosstrackh certificate conditions "with particular average" as per PAR. 2, page 2 of the "Transport Insurance Rules" including mixing and/or contamination, including leakage and/or shortage in excess of 0.50% or 0.75% or 1.00% each tank or on the whole.

| 122· |
| --- |
| Contract Leader |

U0000094

**MARSH LTD**                                    PAGE 70 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

---

ENDORSEMENT NO. 3

and

A.   Bulk Oil Clauses SP-13C with clauses 8 and 11 deleted and normal Shortage or Leakage claims payable in excess of 0.50% or 0.75% or 1.00% as declared whole shipment.
     or

B.   Bulk Oil Clauses SP-13C with clauses 8 and 11 deleted and normal Shortage extended to cover Contamination howsoever arising with such claims payable excess 0.50% or 0.75% as declared each tank.

     or

     **Institute Cargo Clauses "ALL RISKS" including leakage, shortage, and/or** Contamination howsoever arising, whether due to inherent vice or not.

The most favourable of the above conditions for the Assured will be applicable.

CONTAMINATION CLAIMS: PAYABLE IRRESPECTIVE OF PERCENTAGE.

Leakage and shortage claims: payable in excess of 0.50% or 0.75% or 1.00% as declared

an applicable to each bill of lading and/or insurance certificate.
Held covered, at additional premium to be agreed, for the difference in conditions between Ingosstrackh with particular conditions extended to Leakage, Shortage, Mixing and Contamination and one of the above mentioned conditions A, B, or C.

8.   This insurance is extended to cover the risks of confiscation and expropriation subject to the terms and conditions of form R.J.M. May 1971 as follows:

     (i)   This policy is to cover loss of and/or damage to the property hereby insured directly caused by confiscation, seizure, appropriation, requisition for the title or use, willful destruction by /or under the order of the government (whether civil, military or de facto) and/or public or local authority of the country in which the vessel(s)/craft/property hereby insured are covered by the terms of this policy.

---

**1221**

Contract Leader

---

U0000095

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

Nevertheless this policy does not cover any such loss or damage by or under the order of the government and/or public or local authority of Switzerland.

(ii)   No claim to attach hereto for any loss arising from the any debt, failure to provide bond or security, or any other financial cause, whether under court order or otherwise.

No claim to attach hereto for any loss arising from the repossession of the property by any title holder, or arising out of any contractual agreement to which any Assured protected under this policy may be party.

**1221**

Contract Leader

U0000096

**MARSH LTD**                    PAGE 72 OF 82

CONTRACT NO.
JC662009 (1)                 **MARINE & ENERGY PRACTICE**

ENDORSEMENT NO. 3

No claim to attach hereto for delay, deterioration and/or loss of market.

No claim to attach hereto for any loss unless preliminary notification of the occurrence giving rise to such loss shall have been advised in writing to underwriters as soon as practicable, and the Assured undertake that at all times from the date of such preliminary notification they will do and concur in doing all things reasonably practicable to avoid or diminish the loss and to recover the whole of the property insured by this policy.

(iii)   Warranted that the Assured comply in all aspects with the laws (local or otherwise) of any country within whose jurisdiction the property may be.

Warranted all permits necessary for legal operation are obtained.
Should failure to comply with the above warranties prejudice this insurance to the extent of a loss, no liability shall attach hereunder.

(iv)   In the event of any claim hereunder, the Assured undertake to subrogate to underwriters the right of procedure against any other parties for the recovery of, or in respect of, said property.

(v)   No canceling and no return of premium for short interest, unless specially agreed at inception.

(vi)   This insurance does not cover any loss or damage which at the time of the happening of such loss or damage is insured by or would, but for the existence of this policy, be insured by any other existing policy or policies except in respect of any excess beyond the amount which would have been payable under such other policy of policies had this insurance not been effected.

(vii)   Underwriters subscribing to this insurance hereby agree that if a new government were installed in a country and after becoming the recognized government of the country proceeded to confiscation or expropriate property by government decree or other legislation they would settle a loss if it fell under the terms of the policy wording of the insurance. Underwriters subscribing hereto acknowledge and accept that the government might have been installed by force or armed revolt.

9.   It is understood and agreed that the following clause is attached to and made a part of this policy of insurance.

**122¹**

Contract Leader

U0000097

**MARSH LTD**
PAGE 73 OF 82

CONTRACT NO.
JC662009 (1)

**MARINE & ENERGY PRACTICE**

ENDORSEMENT NO. 3

'VESSEL REPAIR CLAUSE"

Vessel to have liberty to dock, undock, change docks, go upon the grid iron, or under repair, with or without cargo on board, to run trial trips after loading, to adjust compasses, to call at any port or ports, to sail with or without pilots, to embark or land cargo or passengers, to land and reship the interest hereby insured, to tow or be towed, to assist vessels in any situation, to render salvage services of any description, to proceed, to touch any stay at any port or places, whatsoever, wheresoever and for purposes howsoever, in or out of route and in any order or rotation including liberty to proceed to and stay at any port or place for the purpose of complying with quarantine or other regulations all without being deemed a deviation and without prejudice to this insurance.

10.    The following clause is attached to and made a part of this insurance.

SUBROGATION:

Privilege is hereby granted the insured to accept contracts of carriage, charters and/or bills of lading and/or receipts, from common carriers and/or owners and/or operators of tugs, barges and/or lighters or terminals which may contain waivers and/or releases of liabilities.

Insurers:                          Premium Proportion:

Underwriters at Lloyd's
London and/or Insuran
Cover Note No.  __SMA 1368 * _____            $____Nil_____

THE EFFECTIVE DATE OF THIS ENDORSEMENT IS May 1, 2008

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

THIS ENDORSEMENT IS ATTACHED TO AND FORMING A PART OF SOUTHERN MARINE & AVIATION UNDERWRITERS, INC. POLICY NO. SM4-1368*

ISSUED TO:  Astra Oil Company, Inc.,

DATE OF ISSUE:  May 1, 2008

SOUTHERN MARINE & AVIATION UNDERWRITERS, INC.

BY _____

| 122' |
|------|
| Contract Leader |

U0000098

**MARSH LTD**                              PAGE 74 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

## INFORMATION

The following Information was provided to Insurers to support the assessment of the risk at the time of underwriting:

Loss history deemed to have been seen and noted by Insurers hereon dated 28th January, 2009 as retained by Marsh Ltd.

Commodity: crude oil and/or petroleum and/or petroleum products shipped in bulk form in a liquid state.

1. Average terms:
   (i)   Transit risks via self-propelled vessel and/or barge or barge or barges in tow: per Bulk Oil Clauses (SP-13c) extended to include shortage and/or leakage and/or loss in weight (or volume) and/or contamination howsoever arising subject deductible .5% of the insured value.

   (ii)  Transit risks via pipeline: all risks excluding unexplained shortage and/or unexplained loss in weight (or volume) unless directly caused by a fortuitous cause, accident or event.
         Deductible option (a) USD5,000
         Deductible option (b) USD100,000

         **IN RESPECT OF PIPELINE RISKS - IF DEDUCTIBLE OPTION (A) IS REQUIRED, THIS MUST BE DECLARED PRIOR TO ATTACHMENT OF RISK, OTHERWISE OPTION (B) SHALL APPLY.**

   (iii) Storage risks: as per form car-009 attached hereto.


2. Valuation:
   As per policy wording.

3. Rate structure (proposed):
   Ocean cargo/barge cargo:                   0.02175%

   Pipeline:          option "a"              0.0045%
                      option "b"              0.0033%

   Storage risks:                             0.01% of values
                                              at risk on the last
                                              day of each month

| 1221 |
| Contract Leader |

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

<u>SECURITY DETAILS</u>

(RE)INSURER'S
LIABILITY:                 **LMA3333**
                           **(Re)insurer's liability several not joint**
                           The liability of a (re)insurer under this contract is several and not joint
                           with other (re)insurers party to this contract. A (re)insurer is liable only
                           for the proportion of liability it has underwritten.  A (re)insurer is not
                           jointly liable for the proportion of liability underwritten by any other
                           (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of
                           any other (re)insurer that may underwrite this contract.
                           The proportion of liability under this contract underwritten by a
                           (re)insurer (or, in the case of a Lloyd's syndicate, the total of the
                           proportions underwritten by all the members of the syndicate taken
                           together) is shown next to its stamp.  This is subject always to the
                           provision concerning "signing" below.
                           In the case of a Lloyd's syndicate, each member of the syndicate
                           (rather than the syndicate itself) is a (re)insurer.  Each member has
                           underwritten a proportion of the total shown for the syndicate (that total
                           itself being the total of the proportions underwritten by all the members
                           of the syndicate taken together).  The liability of each member of the
                           syndicate is several and not joint with other members.  A member is
                           liable only for that member's proportion.  A member is not jointly liable
                           for any other member's proportion.  Nor is any member otherwise
                           responsible for any liability of any other (re)insurer that may underwrite
                           this contract.  The business address of each member is Lloyd's, One
                           Lime Street, London EC3M 7HA.  The identity of each member of a
                           Lloyd's syndicate and their respective proportion may be obtained by
                           writing to Market Services, Lloyd's, at the above address.
                           **Proportion of liability**
                           Unless there is "signing" (see below), the proportion of liability under
                           this contract underwritten by each (re)insurer (or, in the case of a
                           Lloyd's syndicate, the total of the proportions underwritten by all the
                           members of the syndicate taken together) is shown next to its stamp
                           and is referred to as its "written line".
                           Where this contract permits, written lines, or certain written lines, may
                           be adjusted ("signed").  In that case a schedule is to be appended to
                           this contract to show the definitive proportion of liability under this
                           contract underwritten by each (re)insurer (or, in the case of a Lloyd's
                           syndicate, the total of the proportions underwritten by all the members
                           of the syndicate taken together).  A definitive proportion (or, in the case
                           of a Lloyd's syndicate, the total of the proportions underwritten by all
                           the members of a Lloyd's syndicate taken together) is referred to as a
                           "signed line". The signed lines shown in the schedule will prevail over
                           the written lines unless a proven error in calculation has occurred.
                           Although reference is made at various points in this clause to "this
                           contract" in the singular, where the circumstances so require this
                           should be read as a reference to contracts in the plural.

<div style="border:1px solid">

**1221**

Contract Leader
</div>

U0000100

**MARSH LTD**                    PAGE 76 OF 82

CONTRACT NO.
JC662009 (1)                **MARINE & ENERGY PRACTICE**

ORDER HEREON:          100% of 100%.

BASIS OF
WRITTEN LINES:         Percentage of Whole.

SIGNING
PROVISIONS:            In the event that the written lines exceed 100% of the order, any lines written "to stand" will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any of the (re)insurers.

However:

a)    in the event that the placement of the order is not completed by the commencement date of the period of insurance then all lines written by that date will be signed in full;

b)    the signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of insurance, by the documented agreement of the (re)insured and all (re)insurers whose lines are to be varied. The variation to the contracts will take effect only when all such (re)insurers have agreed, with the resulting variation in signed lines commencing from the date set out in that agreement.

| 12? |
| --- |
| Contract Leader |

U0000101

| | **MARSH LTD** | **PAGE 77 OF 82** |
|---|---|---|
| **CONTRACT NO.**<br>JC662009 (1) | **MARINE & ENERGY PRACTICE** | |

**WRITTEN LINES:**

**PREMIUM:**    Per self-propelled Class "A" vessel -

|  |  |  |
|---|---|---|
| Worldwide | | 0.02175% |
| Per barge or barges in tow of tug or tugs via - | | |
| Inland and/or coastal and/or coastwise waters | - | 0.02175% |
| Pipeline transit (Option "A") | | 0.0045% |
| Pipeline transit (Option "B") | | 0.0033% |
| Other land transit | | 0.0067% |
| Contingent/Difference in Conditions/ Guarantee of Collectibility/ Seller's interest: | | |
| Tanker | - | 0.00625% |
| Barge | - | 0.00625% |
| Storage risks | - | 0.01% of values at risk on the last day of each month |

Above rate(s) inclusive of War Risks and SRCC Risks other than surcharged areas or zones (as defined by these Insurers).

1221

Contract Leader

U0000102

95

**MARSH LTD**          PAGE 78 OF 82

CONTRACT NO.
JC662009 (1)          **MARINE & ENERGY PRACTICE**

Above rate(s) inclusive of transshipment risks.

Contingent/Difference in Conditions/Guarantee of Collectibility and Seller's Interest Risks included at 50% of the above rates;

Above rate(s) inclusive of steamer additionals and/or penalties subject to the following Classification Clause:

Classification Clause:

Per iron or steel steamers or motor vessels Classed A-1 American Record or 100 A-1 Lloyd's Register or equivalent, but excluding vessels built (a) for service on the Great Lakes, or (b) for military or naval service. shipments shall be under deck or in containers on or under deck in respect of purpose-built container vessels, or in vans/lighters on or under deck.

**United States Terrorism Risk Insurance Act-Quotation wording**

The Assured has the right to purchase US terrorism insurance in accordance with the provisions of the US Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Programme Reauthorization Act of 2007 (TRIPRA) by Senate. The offer of such terrorism insurance is subject to an additional premium of 20% of storage premium per annum.

Marsh are authorized by Insurers to transmit this offer to the Assured in conjunction with the NAIC approved Policy Holder Disclosure Notice of Terrorism Insurance Coverage Form as currently issued.

In the event that the policy premium above is adjusted, the TRIA figure(s) above are to be the earned amounts for the policy period.

| 122 |
| --- |
| Contract Leader |

U0000103

**MARSH LTD**                    PAGE 79 OF 82

**CONTRACT NO.**
JC662009 (1)          **MARINE & ENERGY PRACTICE**

### United States Terrorism Risk Insurance – Acts of Terrorism already included

It is agreed that in accordance with the provisions and limitations of the US Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Programme Reauthorization Act of 2007 (TRIPRA) by Senate, where coverage for acts of terrorism is already included in this policy, the portion of the annual premium stated elsewhere in this policy attributable to coverage for such acts of terrorism is USD45,000 per annum.

Marsh are authorized by Insurers to transmit notification to the Assured in conjunction with the NAIC approved Policy Holder Disclosure Notice of Terrorism Insurance Coverage Form as currently issued which is deemed to be included in the policy.

In the event that the policy premium above is adjusted, the TRIA figure(s) above are to be the earned amounts for the policy period.

In a Co-Insurance placement, following (re)insurers may, but are not obliged to, follow the premium charged by the leading (re)insurer.

(Re)insurers may not seek to guarantee for themselves terms as favourable as those which others subsequently achieve during the placement.



1221
Contract Leader

U0000104

**MARSH LTD**                                    PAGE 80 OF 82

CONTRACT NO.
JC662009 (1)                    **MARINE & ENERGY PRACTICE**

10%   beazley   AFB 2623  81%
                AFB 623   19%                ACb. ⅕/09

| JG | 7 | 3 | 6 | 0 | 9 | A | N | W | J |
U/W   | T | J | G |

10%   MARKEL SYNDICATE 3000   MKL 3000

| A | N | N | N | N | A | N | N | N | A | A |
| N | V | D | I | N | O | 9 | O | A | R | |

7½%   Talbot   TAL 1183   ⅕/09

| A | V | K | Ø | 7 | 5 | 4 | 8 | 7 | B | Ø | 9 |

MIT 3210

| N | N | N | N | N | A | N | N | A | A |
| 1 | 3 | 9 | 8 | 4 | V | O | 9 | ^ | ^ |

10%                                HfS. 6/5/09.

10%   7/5/2009   CCL 3010

| R | Ø | 9 | Y | 5 | 8 | I | Ø | A | Ø | Ø | Ø |

**1221**
Contract Leader

U0000105

**CONTRACT NO.**
JC662009 (1)

**MARINE & ENERGY PRACTICE**



10%

1.5.09

▲AEGIS

AES
1225

Ø9W15Ø27AAVX

7.50%

SJC
2003

VX40002128I5

10%

AMLIN

AML
2001

TVØ916IØ9wB

Line to stand

MARINE

1221

Contract Leader

U0000106

Case 8:10-cv-01029-JAK-MLG   Document 81-2   Filed 09/29/11   Page 101 of 103   Page ID #:1920

| **122**1 |
| :---: |
| Contract Leader |

U0000107

# Exhibit E

PREMIUM: NIL

Effective December 21, 2009 and in consideration of the premium charged, it is understood and agreed that in the event the Assured does not retain title and/or does not have the contractual obligation to provide first party insurance coverage in respect of goods in storage, this policy will provide contingent, difference in conditions, seller's interest and guarantee of collectibility coverage subject to the terms and conditions of the policy terms and conditions subject to the following requirements:

1. The Assured will make every effort to collect from any third party prior to claiming under the terms and conditions of the captioned policy;

2. The Assured will not divulge the existence of the aforementioned contingent coverage to any third party in which the Assured is making a claim.

3. The Assured will require evidence of first-party insurance carried by their counter-party covering the Assured as Loss Payee and/or Additional Insured.

The policy rate applicable to contingent coverage (other than those storage risks in which the Assured either retains title or has the contractual obligation to insure) will be .005% being 50% of the basic policy rate for storage of .01%.

THE EFFECTIVE DATE OF THIS ENDORSEMENT IS  December 21, 2009

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

THIS ENDORSEMENT IS ATTACHED TO AND FORMING A PART OF COVER NOTE NO. 63490

ISSUED TO:  Astra Oil Company, LLC, et al

DATE OF ISSUE:  December 21, 2009

SOUTHERN MARINE & AVIATION

BY: _Andrew Keene_

ENDORSEMENT NO. 32

IEIB 02970

**102**